COMMONWEALTH of Pennsylvania, Appellee

v.

Felix Lynell HAWKINS, Appellant.

Superior Court of Pennsylvania.

Argued March 14, 2012.

Filed April 11, 2012.

Michael O. Palermo, Jr., Carlisle, for appellant.

John M. Lisko, Assistant District Attorney, Chambersburg, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., PANELLA, and MUNDY, JJ.

OPINION BY MUNDY, J.:

Appellant, Felix Lynell Hawkins, appeals from the March 2, 2011 aggregate judgment of sentence of seven and one-half to 23 years' imprisonment, imposed after a jury found him guilty of two counts of delivery of a controlled substance (cocaine), and one count each of possession with intent to deliver a controlled substance (PWID) (crack cocaine), and criminal use of a communications facility.[1] After careful review, we affirm the judgment of sentence.

The trial court set forth the relevant facts as follows.

On January 4, 2010, police set up a controlled buy with a confidential informant. An officer observed [Appellant] selling the informant drugs out of his apartment at 829 Maple Street, Waynesboro. The next day, the same thing oc-

---

1. Three counts of 35 P.S. § 780–113(a)(30), and one count of 18 Pa.C.S.A. § 7512(a), respectively.

curred, and police got a warrant to search [Appellant's] apartment.[2] His apartment was on the ground floor of the building, which contained multiple apartments.

During the search, [Appellant] was taken into custody. Police found crack cocaine in a sock in the bottom of a dresser drawer in [Appellant's] bedroom. Police also found a black Browning 9 mm handgun inside a Phat Farm bag in the basement of his apartment. The gun was registered to a deceased female from West Virginia. Also in the bag were a set of black scales and clothes. Police found another set of black scales in [Appellant's] bedroom. They also found a plastic bag with marijuana residue inside the Phat Farm bag.

The basement is accessible to other tenants via an exterior door, which was unlocked at the time of the search. The basement is also accessible directly from [Appellant's] apartment through a door in the floor, but that door was locked on the day police searched his apartment. There was testimony that it would take about 10–15 seconds to go from the kitchen inside [Appellant's] apartment to the basement.

Trial Court Opinion, 6/22/11, at 1–2 (footnote omitted).

On January 6, 2010, Appellant was arrested and charged with two counts of delivery of a controlled substance, and one count each of possession with intent to deliver, criminal use of a communication facility, and persons not to possess firearms.[3] On June 10, 2010, Appellant filed an omnibus pretrial motion arguing, *inter alia*, that the search warrant was invalid, and therefore, all evidence should be suppressed as fruits of an illegal search. Appellant's Omnibus Motion, 6/10/10, at ¶¶ 4–7. On August 13, 2010, a hearing was held on said motion. On August 18, 2010, the trial court entered an order denying Appellant's suppression motion on the basis that "the search warrant application contained sufficient information to corroborate the information from the confidential informant[.]" Trial Court Order, 8/18/10, at 2.

Appellant proceeded to a jury trial on December 6, 2010, and was convicted of the aforementioned charges. Thereafter, on March 2, 2011, Appellant was sentenced to an aggregate term of seven and one-half to 23 years' imprisonment.[4] On March 9, 2011, Appellant filed timely post-sentence motions, which were denied by the trial court on June 22, 2011. On June 30, 2011, Appellant filed a timely notice of appeal.[5]

On appeal, Appellant raises the following issues for our review.

1. Did the Honorable Suppression Court err in denying [Appellant's] *Motion to Suppress* the fruits of the Search Warrant as the application for the war-

---

2. We note, the warrant was issued prior to the second controlled buy.

3. Count 5, persons not to possess firearms, 18 Pa.C.S.A. § 6105(a), was severed for a separate trial. Trial Court Order, 11/8/10.

4. Specifically, at count one, Appellant was sentenced to 60 to 120 months' imprisonment; at both counts two and three, Appellant was sentenced to 12 to 60 months' imprisonment; and at count four Appellant was sentenced to six to 36 month's imprisonment. All four counts are to run consecutively.

5. Appellant and the trial court have complied with Pa.R.A.P. 1925. We note that there are two 1925(a) opinions. The first by the Honorable Richard J. Walsh addresses Appellant's second issue. *See* Trial Court Opinion, 8/9/11. At Judge Walsh's request, the Honorable Douglas W. Herman authored a second opinion addressing Appellant's first issue, as Judge Herman handled the suppression motion prior to trial. *See* Trial Court Opinion, 8/11/11.

rant was without probable cause and thus deficient in that:

> a. the veracity, basis of knowledge, credibility or reliability of the confidential informant ["C.I."] was not included in the affidavit supporting the warrant.
>
> b. the C.I. was permitted to drive to and from the target residence without a search of his vehicle on either occasion [said search is absent from the affidavit].
>
> c. the affidavit is silent as to narcotics being stored in the actual residence.
>
> d. the affidavit fails to set forth any independent knowledge of drug activity.
>
> e. the affidavit is without corroboration of the C.I. or the identity of 'lil cuz'. [it was learned immediately prior to trial that the C.I. called everyone 'lil cuz' and this was not a specific person known to him at the time the search warrant was issued].
>
> 2. Did the Honorable Trial/Sentencing Court err in applying a mandatory sentence pursuant to 42 Pa.C.S.A. § 9712.1; finding that drugs found in the first floor bedroom on January 5, 2010 were in 'close proximity' to a handgun found in the common basement of the duplex?

Appellant's Brief at 7 (brackets in original).

 Generally, our standard of review when addressing a challenge to a trial court's denial of suppression is "whether the factual findings are supported by the record and whether the legal conclusions drawn from these facts are correct." *Commonwealth v. Tiffany,* 926 A.2d 503, 506 (Pa.Super.2007) (citations omitted), *appeal denied,* 597 Pa. 706, 948 A.2d 804 (2008).

When reviewing the rulings of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Id.* (citations and internal quotation marks omitted).

In the instant matter, Appellant contends various individual deficiencies in the affidavit of probable cause in support of the search warrant rendered the warrant invalid. Appellant's Brief at 14. Specifically, Appellant has divided his first claim into five sub-issues, which he has labeled issues (a) through (e). Appellant avers that "after reading the four (4) corners of the *Affidavit of Probable Cause* in support of the warrant application, [the affidavit fails to contain an] indication of the informant's past history of reliability or where the informant obtained the information provided regarding the sale of narcotics from 829 Maple Street." Appellant's Brief at 16 (footnote omitted). Additionally, Appellant avers there were no objective facts, and "Detective Adolini[, the affiant] did not indicate that he had used this confidential informant before or at that this informant has been involved in other cases involving drug transactions and had been correct in the information provided." *Id.* at 16–17. Further, Appellant avers "any indicia of reliability would be severed as Detective Adolini **failed** to state in his *Affidavit* that the vehicle in which C.I. was traveling in alone was searched, or that there was any prior information concerning drugs being stored or sold from 829 Maple Street." *Id.* at 17. Finally, Appellant contends that "generally describing 'lil cuz' as a 'black male' is an insufficient

basis on which to establish probable cause for the warrant." *Id.*

■■■ Our standard of review, however, does not look at each individual circumstance in determining if there is probable cause, rather we look to the circumstances as a whole.

> The standard for evaluating whether probable cause exists for the issuance of a search warrant is the totality of the circumstances test as set forth in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) and adopted by the [Pennsylvania] Supreme Court in *Commonwealth v. Gray,* 509 Pa. 476, 484, 503 A.2d 921, 925 (1985). *Commonwealth v. Jones,* 542 Pa. 418, 424, 668 A.2d 114, 116 (1995). A magistrate is to make a practical common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Id.* at 424, 668 A.2d at 116–117 (citations omitted).

*Commonwealth v. Gindlesperger,* 706 A.2d 1216, 1219 (Pa.Super.1997) (internal quotation marks omitted), affirmed, 560 Pa. 222, 743 A.2d 898 (1999), *cert. denied, Pennsylvania v. Gindlesperger,* 533 U.S. 915, 121 S.Ct. 2519, 150 L.Ed.2d 692 (2001). In reviewing the validity of a search warrant, the "reviewing court is limited to determining whether there is substantial evidence supporting the issuing authority's decision to approve the warrant." *Commonwealth v. Cramutola,* 450 Pa.Super. 345, 676 A.2d 1214, 1216 (1996).

Herein, the trial court concluded "the search warrant application contained sufficient information to corroborate the information from the confidential informant and for that reason [Appellant's] motion to suppress was denied." Trial Court Order, 8/18/10, at 2. Based on our own independent review of the warrant application, we are compelled to agree.

Detective Adolini's affidavit of probable cause provides, in relevant part, the following information.

2. This investigation involves the sale of crack cocaine from the residence at 829 Maple [Street] Waynesboro Borough, Franklin County, Pennsylvania. The residence is occupied by a black male know to the CI as Lil Cuz.

3. With in [sic] 48 hours of January 03, 2010, I met with FC–292, hereinafter known as confidential informant (CI). The CI told me that he/she had prearranged a purchase of crack cocaine from a black male known to him/her as Lil Cuz who resides at 829 Maple Street, down stairs apartment. The CI was searched for monies and contraband with negative results. The CI was provided with $100.00 of pre-recorded U.S. currency from the Waynesboro Police Department Funds. Surveillance was set up in the area by Detective Taylor and I. The CI was followed to 829 Maple Street. Detective Taylor observed the CI arrive at the residence and knock on the door on the south east corner of the residence. A short time later the door opened and the CI entered. A short time later the CI exited the residence. The CI was followed to a predetermined meeting location and turned over a quantity of crack cocaine to me. The CI told me that he/she purchased the crack cocaine from a black male inside the residence known to him/her as Lil Cuz.

[4.] With in [sic] 48 hours of January 4, 2010, A purchase of crack cocaine is anticipated from 829 Maple Street down stairs apartment Borough of Waynesboro Franklin County PA. The purchase will be conducted in the following manner: Officers will meet with the CI and

she/he will be searched for the presence of money and or contraband. Surveillance will be set up in the area of [ ] 829 Maple Street by officers. The CI will be provided with a quantity of U.S. currency from Waynesboro Police Department funds. The CI will previously have made contact with Lil Cuz whom resides at 829 Maple Street, down stairs apartment and set up a purchase of crack cocaine. The CI will be kept in view and followed to 829 Maple Street, down stairs apartment. The CI will be observed entering 829 Maple Street, down stairs apartment and a short time later exiting. The CI will meet with officers and will turn over a quantity of suspected crack cocaine. Probable cause will be established that crack cocaine is being stored and sold from the residence when these sequences of events take place making the search warrant valid.

[5.] Your affiant believes that probable cause exists to search the residence and requests that an anticipatory search warrant be issued for 829 Maple Street, down stairs apartment Borough of Waynesboro PA, Franklin County. The investigation has in fact revealed that controlled substances, specifically crack cocaine, a schedule II controlled substance are being sold from the residence with two controlled purchase[s] of crack cocaine from 829 Maple Street down stairs apartment Borough of Waynesboro Franklin County PA. Your affiant requests that all persons present at the residence at the time of the execution of the search warrant be subject to search, as well as all vehicles under control of said persons. Affiant requests that these persons be subject to search for money, drugs, paraphernalia and weapons, for the safety of the officers and to prevent removal or destruction of evidence. This affiant knows, based upon my training and experience as a drug investigator and police officer, that when faced with the impending discovery or apprehension, drug dealers and drug users often try to conceal the evidence of their crime on their person or on the persons of others in the hope that they will not be subject to search, and therefore evade arrest. Based upon these facts and circumstances I request an anticipatory search warrant be issued for 829 Maple Street, down stairs apartment Borough of Waynesboro PA, Franklin County.

Application for Search Warrant, Affidavit of Probable Cause, 1/5/10, at 2–3.

■ Under the totality of the circumstances test, we conclude that the affidavit set forth sufficient information to provide a substantial basis for concluding that probable cause existed to issue the search warrant. *See Gindlesperger, supra.* Specifically, the affidavit indicates that a controlled buy was set up wherein the CI purchased crack cocaine from a black male known as Lil Cuz residing at 829 Maple Street. *See* Application for Search Warrant, Affidavit of Probable Cause, 7/30/09, at 2, ¶ 3. The affidavit further reveals the CI was searched prior to the controlled buy, followed to the residence at 829 Maple Street, observed entering the residence and exiting a short time later. *Id.* Additionally, the CI turned over a quantity of crack cocaine to Detective Adolini, the affiant. *Id.* Based on this information, a second controlled buy was prearranged where CI would repeat a buy of crack cocaine from Lil Cuz using prerecorded buy money. *Id.* at ¶ 4. Finally, "[p]robable cause [would] be established that crack cocaine is being stored and sold from the residence when these sequences of events take place[.]" *Id.* This information, as a whole, contained sufficient information for

the trial court to issue a warrant to search 829 Maple Street.

Additionally, the trial court cites *Commonwealth v. Dean*, 693 A.2d 1360 (Pa.Super.1997), where this Court addressed a very similar circumstance. In *Dean*, the appellant argued the affidavit of probable cause did not provide information which described the basis of the CI's knowledge that the appellant was selling narcotics, and that the affidavit was devoid of any facts that would demonstrate the CI's reliability. *Dean, supra* at 1365–1366. The *Dean* Court emphasized "that probable cause is to be determined based upon the totality of the circumstances." *Id.* at 1366. Applying the totality of circumstances test, this Court in *Dean* concluded as follows.

In the present case, the informant told [the] detective [ ] that he knew appellant was selling drugs from his home because he had been inside appellant's residence and purchased drugs from him in the past.[4] In response to this information, the police conducted a controlled buy which corroborated the initial information within 48 hours of the search. Under the circumstances presented in the present case, a magistrate could have concluded by a fair probability that drug selling was taking place at appellant's residence. *See Commonwealth v. Baker*, 532 Pa. 121, 615 A.2d 23 (1992) (facts sufficient to establish probable cause for issuance of search warrant where informant's information implicating defendant as seller was corroborated by police officer's first-hand observations when he gave informant money to purchase cocaine and saw informant enter residence and return from residence with cocaine); [*Commonwealth v.*] *Luton*, [448 Pa.Super. 608, 672 A.2d 819, 821 (Pa.Super.1996) ] (police-conducted "controlled buy" sufficiently corroborated neighbors' observations alleging drug operations from defendant's home); *Common-*

*wealth v. Johnson*, 358 Pa.Super. 435, 517 A.2d 1311 (1986) (finding an abundance of probable cause where a controlled buy was conducted within 48 hours of the execution of the search wherein defendant left residence and met with informant who returned to police with drugs).

[4] While we note that the information initially provided by the informant alone may not have been enough to support a finding of probable cause, since there are no facts in the affidavit that allege that the informant had been used in the past or that he had intimate knowledge of appellant, the fact that such information was corroborated by the police with a controlled buy provides substantial reliability. Corroboration provides a "substantial basis for crediting hearsay" information given by informants.

*Id.* (footnote in original; citation in footnote omitted).

As the circumstances in the instant matter are similar to those in *Dean*, we conclude the trial court did not err in concluding probable cause existed to issue the search warrant. A controlled buy had been completed, yielding crack cocaine from 829 Maple Street, the CI was willing to cooperate in a second controlled buy within the 48–hour period, and Detective Adolini took adequate precautions to ensure the substantial reliability of the controlled buy would corroborate the information already obtained. Therefore, based on the foregoing, we conclude the affidavit set forth sufficient information to provide a substantial basis for the magistrate to conclude that probable cause existed to issue the search warrant.

We turn now to Appellant's second argument challenging the trial court's imposition of a mandatory minimum sentence pursuant to 42 Pa.C.S.A. § 9712.1(a). Appellant avers, "the Commonwealth failed to prove, by a preponderance of the evidence, that Section 9712.1 applied." Appellant's

Brief at 18. Specifically, Appellant argues, "[t]here is no evidence presented at trial of this matter that [Appellant] was in actual physical possession or control of the firearm, nor was the firearm 'within reach.'" *Id.* at 20.

▉▉▉ Our standard of review is as follows.

The sentencing code requires a mandatory minimum sentence be imposed on anyone convicted of a violent crime who visibly possessed a firearm, or firearm replica, during the commission of the crime.

Generally, a challenge to the application of a mandatory minimum sentence is a non-waiveable challenge to the legality of the sentence. Issues relating to the legality of a sentence are questions of law, as are claims raising a court's interpretation of a statute. Our standard of review over such questions is *de novo* and our scope of review is plenary.

*Commonwealth v. Brougher,* 978 A.2d 373, 377 (Pa.Super.2009) (citation omitted).

In ascertaining whether the trial court correctly applied the mandatory minimum pursuant to section 9712.1(a) of the Sentencing Code, we are guided by the following.

(a) **Mandatory sentence.**—Any person who is convicted of a violation of section 13(a)(30) of the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, when at the time of the offense the person or the person's accomplice is in physical possession or control of a firearm, whether visible, concealed about the person or the person's accomplice **or within the actor's or accomplice's reach or in close proximity to the controlled substance,** shall likewise be sentenced to a minimum sentence of at least five years of total confinement.

42 Pa.C.S.A. § 9712.1, **Sentences for certain drug offenses committed with firearms** (emphasis added).

In *Commonwealth v. Sanes,* 955 A.2d 369, 376 (Pa.Super.2008), *appeal denied,* 601 Pa. 696, 972 A.2d 521 (2009), this Court interpreted the meaning of the phrase "in close proximity to the controlled substance" as set forth in section 9712.1(a). As a matter of law, we determined that a loaded handgun located inside a closet approximately six to eight feet away from a sandwich baggie containing cocaine "satisfie[d] Section 9712.1's requirement that the firearm be in 'close proximity' to the controlled substance." *Sanes, supra* at 376. The *Sanes* Court noted that "[its] decision [ ] also comports with the General Assembly's intent in enacting Section 9712.1, which was to provide a deterrent for those who are dealing in drugs and using firearms." *Id., citing* HB 447, Legislative Journal–Senate, November 19, 2004 at 2386.

Following *Sanes, supra,* this Court further clarified the connection between close proximity and the mandatory minimum in section 9712.1(a) in *Commonwealth v. Zortman,* 985 A.2d 238 (Pa.Super.2009), *affirmed,* 23 A.3d 519 (Pa.2011), *cert. denied, Zortman v. Pennsylvania,* —— U.S. ——, 132 S.Ct. 1634, 182 L.Ed.2d 236 (2012). In *Zortman,* we held that a handgun recovered from the bedroom of a residence was in close proximity for purposes of section 9712.1(a) to drugs found in different rooms elsewhere in the same residence. *Id.* at 244. Specifically, while the handgun was found in the bedroom, the drugs discovered in the kitchen and inside a briefcase located in a separate room were determined to be in close proximity to the handgun. *Id.* Accordingly, this Court has construed the "close proximity"

language found in section 9712.1(a) broadly and, as such, has held the presence of both a controlled substance and a firearm together in the same residence satisfies the statutory requirement. *Zortman, supra* at 244; *Sanes, supra* at 374–375. The holding in *Zortman, supra,* confirms that the reach of the "close proximity" language of section 9712.1(a) stretches far beyond the six to eight feet perimeter that was at issue in *Sanes, supra.*

Instantly, Appellant argues if *Zortman* applies, "the case at bar, must be one in which the proverbial 'line is drawn' and the facts of this case, as presented ... a firearm found on separate and distinct floors, concealed within a bag in a shared duplex basement, with access to all, cannot be said to be in close proximity to a quantity of drugs found in an upstairs bedroom." Appellant's Brief at 23–24.

Herein, the record supports the trial court's finding that the firearm was in "close proximity" to the controlled substance recovered in Appellant's bedroom, stating, "the gun was recovered from a common area inside [Appellant's] apartment—an area to which he had access." Trial Court Opinion, 6/21/11, at 7. Additionally, "police found a black set of scales both inside the bag [with the firearm] and inside [Appellant's] bedroom." *Id.* Finally, "[t]he gun was registered to a deceased [out of state] person[,]" and "[t]here is no evidence that the gun or the bag belonged to any of the other tenants." *Id.* at 6–7. The evidence presented demonstrated Appellant could access the basement directly from his apartment within 10 to 15 seconds; therefore, the gun in the basement was in close proximity to the drugs in Appellant's bedroom. Based on the foregoing, we conclude the trial court properly determined that the gun was in close proximity to the drugs, and therefore correctly applied the mandatory minimum pursuant to section 9712.1(a). As a result, Appellant's second issue must fail.

Accordingly, for all of the foregoing reasons, we discern no error on the part of the trial court. Therefore, we affirm Appellant's March 2, 2011 judgment of sentence.

Judgment of sentence affirmed.