J-S16009-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF: R.J., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: R.J., A MINOR | No. 1567 EDA 2015 |

Appeal from the Dispositional Order May 27, 2015
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-JV-0000948-2015

BEFORE: OTT, J., DUBOW, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.: **FILED FEBRUARY 19, 2016**

Appellant R.J., a minor, appeals from the dispositional order entered in the Philadelphia County Court of Common Pleas following his adjudication of delinquency for possession of a firearm by a minor[1] and carrying a firearm on public streets in Philadelphia.[2] After careful review, we affirm.

On April 29, 2015, at approximately 7:30 p.m., Officer Kennedy and Officer McCarthy responded to a radio call that a black male in camouflaged clothing had fired a gun near Kozy's Bar by 51st Street and Haverford Avenue. Suppression Hearing N.T., 5/18/2015, at 3-4. The officers observed three males in a breezeway between houses near Kozy's Bar, one

_____

[1] 18 Pa.C.S. § 6110.1(a).

[2] 18 Pa.C.S. § 6108.

of whom was wearing camouflaged pants. *Id.* at 4. When the police officers introduced themselves as such, one of the three males fled, leaving Appellant and the male wearing the camouflaged pants standing shoulder to shoulder in the breezeway. *Id.* The police then observed a silver gun on the ground approximately one foot away from the man with the camouflaged pants. *Id.* At this point, the officers frisked both males, detaining them with handcuffs so that they would not lunge at the gun. *Id.* While frisking Appellant, Officer Kennedy felt a hard metal object, which was a firearm. *Id.* at 5. Appellant was arrested and charged with possession of a firearm with manufacturer number altered,[3] firearms not to be carried without a license,[4] possession of a firearm by a minor, and carrying a firearm on public streets in Philadelphia.

On May 5, 2015, Appellant filed a motion to suppress all physical evidence on the basis that his stop, frisk, and arrest were illegal as police lacked reasonable suspicion to detain him and lacked probable cause to arrest him. On May 18, 2015, the court conducted a hearing and denied Appellant's motion. Following a bench trial, the court found Appellant guilty of possession of a firearm by a minor and carrying a firearm on public streets in Philadelphia and acquitted Appellant of the other charges.

_____

[3] 18 Pa.C.S. § 6110.2(a).

[4] 18 Pa.C.S. § 6106(a)(1).

On May 27, 2015, Appellant filed a timely notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issue for our review:

> DID NOT THE [TRIAL] COURT ERR IN DENYING [APPELLANT'S] MOTION TO SUPPRESS PHYSICAL EVIDENCE WHEN AN OFFICER ILLEGALLY DETAINED AND SEIZED [APPELLANT] ON LESS THAN PROBABLE CAUSE OR REASONABLE SUSPICION BASED ON AN UNSUBSTANTIATED AND UNCORROBORATED ANONYMOUS TIP?

Appellant's Brief at 3.

Appellant argues police illegally detained and arrested him. He claims that the anonymous tip the officers received did not provide reasonable suspicion for a *Terry*[5] stop. Appellant avers that when the officers handcuffed him, they were placing him under the functional equivalent of arrest for which they lacked probable cause. Appellant concludes the court erred in denying his motion to suppress. We disagree.

When addressing a challenge to a trial court's denial of a suppression motion, our standard of review is "whether the factual findings are supported by the record and whether the legal conclusions drawn from these facts are correct." *Commonwealth v. Hawkins*, 45 A.3d 1123, 1126 (Pa.Super.2012), *appeal denied*, 53 A.3d 756 (Pa.2012) (internal citation omitted). Further:

---

[5] *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

[w]hen reviewing the rulings of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Id.* (citations and internal quotation marks omitted). Additionally, when reviewing the suppression court's rulings, we consider only the suppression record. *In re L.J.,* 79 A.3d 1073, 1085 (Pa.2013) ("it is inappropriate to consider trial evidence as a matter of course, because it is simply not part of the suppression record, absent a finding that such evidence was unavailable during the suppression hearing.").

Pennsylvania recognizes three types of interactions between police officers and citizens. *Commonwealth v. Stevenson*, 832 A.2d 1123, 1126-27, (Pa.Super.2003). "Interaction between citizens and police officers, under search and seizure law, is varied and requires different levels of justification depending upon the nature of the interaction and whether or not the citizen is detained." *Id.*

The first category, a mere encounter or request for information, does not need to be supported by any level of suspicion, and does not carry any official compulsion to stop or respond. The second category, an investigative detention, derives from [*Terry, supra.*] and its progeny: such a detention is lawful if supported by reasonable suspicion because, although it subjects a suspect to a stop and a period of detention, it does not involve such coercive conditions as to constitute the functional equivalent of an arrest. The final category, the arrest or custodial detention, must be supported by probable cause.

*Commonwealth v. Gonzalez*, 979 A.2d 879, 884 (Pa.Super.2009) (quoting

*Commonwealth v. Moyer*, 954 A.2d 659, 663 (Pa.Super.2008) (*en banc*)

(quoting *Commonwealth v. Smith*, 836 A.2d 5, 10 (Pa.2003))).

> A "mere encounter" can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond.
>
> In contrast, an "investigative detention," by implication, carries an official compulsion to stop and respond, but the detention is temporary, unless it results in the formation of probable cause for arrest, and does not possess the coercive conditions consistent with a formal arrest. Since this interaction has elements of official compulsion it requires "reasonable suspicion" of unlawful activity. In further contrast, a custodial detention occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest.

*Stevenson*, 832 A.2d at 1127-29.

We analyze whether a "mere encounter" has risen to the level of an "investigative detention" under the following standard:

> To guide the crucial inquiry as to whether or not a seizure has been effected, the United States Supreme Court has devised an objective test entailing a determination of whether, in view of all surrounding circumstances, a reasonable person would have believed that he was free to leave. In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained. In making this determination, courts must apply the totality-of-the-circumstances approach, with no single factor dictating the ultimate conclusion as to whether a seizure has occurred.

*Commonwealth v. Downey*, 39 A.3d 401, 405 (Pa.Super.2012), *appeal denied*, 50 A.3d 124 (Pa.2012) (quoting *Commonwealth v. Coleman,* 19 A.3d 1111, 1116 (Pa.Super.2011)).

"Police must have reasonable suspicion that a person seized is engaged in unlawful activity before subjecting that person to an investigative detention." *Commonwealth v. Goldsborough*, 31 A.3d 299, 306 (Pa.Super.2011), *appeal denied*, 49 A.3d 442 (Pa.2012) (quoting *Commonwealth v. Cottman,* 764 A.2d 595 (Pa.Super.2000)).

> Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of intrusion warrant a [person] of reasonable caution in the belief that the action taken was appropriate.

*Id.* (quoting *Commonwealth v. Jones,* 874 A.2d 108, 116 (Pa.Super.2005) (internal citations and quotation marks omitted)).

Police must have probable cause that a person is engaged in criminal activity before subjecting that person to an arrest or "custodial detention." *Goldsborough*, 31 A.3d at 306.

> Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a [person] of reasonable caution in the belief that the suspect has committed or is committing a crime. The

question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require **only a probability,** and not a *prima facie* showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

*Id.* (quoting **Commonwealth v. Williams***, 2 A.3d 611 (Pa.Super.2010) (*en banc*), *appeal denied*, 19 A.3d 1051 (Pa.2011)) (internal citations and quotation marks omitted) (emphasis in original).

The key difference between an investigative detention and a custodial one is that the latter involves such coercive conditions as to constitute the functional equivalent of an arrest. In determining whether an encounter with the police is custodial, the standard is an objective one, with due consideration given to the reasonable impression conveyed to the person interrogated rather than the strictly subjective view of the troopers or the person being seized and must be determined with reference to the totality of the circumstances.

**Commonwealth v. Pakacki**, 901 A.2d 983, 987-88 (Pa.2006) (internal citations omitted).

The court considers the totality of the circumstances to determine if an encounter is investigatory or custodial, but the following factors are specifically considered: the basis for the detention; the duration; the location; whether the suspect was transported against his will, how far, and why; whether restraints were used; the show, threat or use of force; and the methods of investigation used to confirm or dispel suspicions.

**Goldsborough,** 31 A.3d at 306 (quoting **Commonwealth v. Teeter***, 961 A.2d 890, 899 (Pa.Super.2008)).

Here, the interaction between the police officers and Appellant began as a mere encounter. The officers responded to a radio call about a shooting

and a black male suspect who was dressed in camouflage. The officers saw three men in a breezeway close to the reported scene, one of whom was wearing camouflaged pants. They announced that they were police officers. At this point, this was a mere encounter because the officers did not stop Appellant or his companions.

Then, one of the three men ran without provocation. At this point, the officers approached Appellant and his camouflaged companion and observed a silver gun on the ground a foot away from the duo. The police officers then had reasonable suspicion to suspect that Appellant could be involved in illegal gun activity. At this point, the officers detained Appellant and his comrade with handcuffs to frisk them.[6] This was a reasonable measure for officer safety considering the close proximity of the gun. It was at this point that the frisk revealed Appellant's gun. The police now had probable cause to arrest Appellant.

Thus, we find the suppression court's factual findings are supported by the record of the suppression court and the legal conclusions drawn therefrom are correct. *See Hawkins, supra.*

Dispositional order affirmed.

_____

[6] "We, of course, do not hold that every time the police place an individual in handcuffs that individual has been arrested." *Commonwealth v. Carter*, 643 A.2d 61, 68 (Pa.1994).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/19/2016