**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAY W. CLARK | : | |
| | : | |
| Appellant | : | No. 889 EDA 2024 |

Appeal from the Judgment of Sentence Entered March 12, 2024
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0004014-2022

BEFORE: DUBOW, J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.*

MEMORANDUM BY FORD ELLIOTT, P.J.E.:         **F ILED JUNE 23, 2025**

Appellant, Jay W. Clark, appeals from the judgment of sentence imposed following his convictions for possessing a controlled substance, possessing a controlled substance with intent to deliver (methamphetamine), possessing drug paraphernalia, and possessing a firearm though ineligible.[1] He argues the trial court abused its discretion by denying his motions to suppress physical evidence, produce a confidential informant ("CI"), and dismiss all charges due to a violation of his right to a speedy sentencing. We affirm.

On May 12, 2022, police officers from the Upper Chichester Township Police Department executed a search warrant for evidence of drug trafficking at a specific address on Bethel Road in Upper Chichester Township in Delaware

_____

*Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S. §§ 780-113(a)(16), 30, 32 and 18 Pa.C.S. § 6105, respectively.

County, Pennsylvania. The location was an automotive service shop owned and operated by Appellant. Officer Chad Osborn and his partner entered the shop. Directly in front of the door was a desk behind which Appellant stood. After speaking with him briefly, the officers detained Appellant. When another man came through a doorway, the officers detained him as well. N.T. Trial, 11/14/23, 191-206; Ex. C-1, Ex. C-2.

Video and photographic evidence and officer testimony established that on the floor near to where Appellant was standing was a blue zippered bag. Inside that bag was a loaded .357 magnum caliber revolver and a black zipper clamshell bag. Inside the clamshell bag was: a digital scale; a plastic bag containing a white crystalline substance later determined to be 24.3 grams of methamphetamine; a plastic bag with a rubber band containing plant matter later determined to be 6.26 grams of marijuana; a black glass container containing plant matter later determined to be 1.26 grams of marijuana; a small baggie containing a white crystalline substance later determined to be .1 gram of methamphetamine; a cylinder containing white crystals later determined to be .63 grams of methamphetamine; and a cylinder containing plant matter later determined to be 4.41 grams of marijuana. On top of the desk was a plastic shopping bag inside of which were multiple color-tinted smaller baggies consistent with packaging for controlled substances. These baggies showed signs of having been previously used to deliver controlled substances since they had a white powder residue inside. Detective Michael Molineux took photographs of all the items recovered and secured and tagged

the items. The suspected controlled substances were sent to the State Police lab for testing. Appellant was arrested at the scene and $264 in currency recovered from his pocket. Police officer found another $125 in currency in Appellant's car parked nearby. N.T. Trial, 11/15/23, 5-42, 45-49, 82; Ex. C-2, Ex. C-13, Ex. C-16.

The revolver was swabbed for DNA and the swabs sent to the state police lab for analysis. Detective Jack Keith obtained a buccal swab from Appellant with his consent and sent that swab to the lab for comparison to the DNA swabs from the revolver. A forensic DNA specialist conducted the comparison and determined that the DNA of three persons was on the revolver, including Appellant's DNA to a high degree of probability. The revolver itself was sent to the Delaware County firearms examiner for testing. It was test fired and determined to be operable. N.T. Trial, 11/15/23, 76-83, 94-96, 105-111; Ex. C16.

Detective Sean Gallagher, deemed an expert in the manner in which trafficking in controlled substances is conducted, reviewed the evidence recovered pursuant to the search warrant and opined that the methamphetamine was possessed with the intent to deliver. The detective based his opinion on the loaded firearm kept near the illegal drugs, the cash found on Appellant and the bulk amount of methamphetamine. He explained that a single dose of methamphetamine amounting to .2 grams yielded a "high" that would last seven to eight hours. A user would spend the cash Appellant had on him on single dose amounts, whereas a dealer would hold

onto the cash. The bulk methamphetamine in the plastic bag – approximately an ounce worth between $250 to $400 on the street and about 120 single doses – was essentially several weeks' worth of methamphetamine for one user even if used without a break. Both the loaded firearm and digital scale were items more likely found in the possession of a dealer than a user. N.T. Trial, 11/15/23, 118-127.

Appellant filed a motion to suppress the physical evidence alleging the lack of probable cause within the four corners of the search warrant. *See* Appellant's Motion to Suppress, 10/13/23; Trial Court Record, 133-152. He also filed a motion to compel the production of the CI used to conduct four purchases of controlled substances from the auto shop, as related in the search warrant. *See* Appellant's Motion to Compel, 10/13/23; Trial Court Record, 112-132. The motions were heard by the trial court on October 14, 2023, and denied. N.T. Suppression, 10/14/23, 17, 20, 22; Order, 10/19/23 (denying disclosure of CI); Order, 10/19/23 (denying suppression); Trial Court Record, 155-154.

Trial commenced on November 14, 2023, with jury selection. Appellant waived his right to a jury trial on the firearm charge, which would be tried before the judge after the jury's verdict. The Commonwealth presented the testimony of Officer Osborn and the video footage from his and his partner's body camera. It also presented the testimony of Detective Molineux and that of the lead detective, Jack Keith, and three expert witnesses. Appellant presented the testimony of John Lockee. N.T. Trial, 11/15/23, 145, 148. Mr.

Lockee testified he was present on the day of the search, but did not testify to any specific action that was taken other than the need to get Appellant's keys from a detective so that he could lock up the shop for Appellant. **Id.**, 146-147.

The jury found Appellant guilty of all the drug related offenses: count 1, possessing a controlled substance; count 2, possessing a controlled substance with intent to deliver (methamphetamine); and count 3, possessing drug paraphernalia. N.T. Trial, 11/16/23, 78-79. In addition, the jury made the following factual findings: (1) Appellant possessed the firearm; and (2) that firearm was within Appellant's reach. **Id.**, 79. Following the dismissal of the jury, the Commonwealth introduced evidence that Appellant had been convicted of possessing a controlled substance with intent to deliver on July 27, 2010, making him ineligible to possess a firearm. **Id.**, 84. The trial court then found Appellant guilty of possessing a firearm though ineligible. **Id.** The trial court revoked bail and ordered a pre-sentence investigation ("PSI"), mental health evaluation ("MHE"), and drug and alcohol evaluation. **Id.**, 86. It first scheduled sentencing for 60 days later on January 22, 2024. **Id.**, 87. Because that date was not a "good date" for Appellant's counsel, the trial court suggested January 29th. **Id.** Appellant's counsel asked that sentencing be delayed until February and agreed to a date of February 5, 2024. **Id.**, 88. Sentencing was later moved to February 13, 2024. Order, 1/2/24; Trial Court Record, 163. On that date, the court discovered that the PSI and MHE had not

been completed. N.T. Sentencing, 3/12/24, 4. It then ordered the completion of the reports and rescheduled sentencing for March 11, 2024. ***Id.***, 3.

Appellant moved to dismiss all charges pursuant to Pennsylvania Rule of Criminal Procedure 704, which requires that sentencing take place within 90 days of conviction. ***See*** Appellant's Motion to Dismiss, 3/8/24; Trial Court Record 166-168. Appellant alleged that there was no good cause for the delay as the "report simply wasn't done as ordered by the Court as a result of an apparent administrative breakdown." N.T. Sentencing, 3/12/24, 4.

The trial court denied the motion to dismiss. The court made specific findings that: it had ordered the PSI and MHE; when it realized the key documents were not complete and available for the scheduled sentencing, it immediately ordered them to be completed; and it correspondingly rescheduled sentencing for March 11, 2024, which was moved to March 12 at Appellant's request. ***Id.***, 7-8. The court also found that there was no prejudice to Appellant from the delay. ***Id.***, 8; ***see also*** Order, 3/12/24; Trial Court Record, 176. The court then moved to sentence Appellant, and imposed consecutive terms of imprisonment of 8 to 36 months on the conviction for possessing a controlled substance with intent to deliver and 48 to 96 months on the conviction for possessing a firearm though ineligible. N.T. Sentencing, 3/12/24, 15. The aggregate term of imprisonment was 56 to 132 months. The court also ordered forfeiture of the cell phone recovered during the search, the firearm, and the cash found on Appellant and in his car. ***Id.***

Appellant filed a timely notice of appeal on March 20, 2024. The trial court ordered Appellant to file a concise statement, pursuant to Pa.R.A.P. 1925, and Appellant complied.

Appellant raises the following issues for our review:

1. Whether the judgment of sentence imposed by the lower court should be vacated, because the [trial] court abused its discretion in denying Appellant's motion to suppress physical evidence, thereby violating Appellant's right to fair search and seizure under the Fourth Amendment to the United States Constitution and Article 1, Section 8 of the Pennsylvania State Constitution, where the sole evidence of controlled narcotics purchases occurring on the property was pure hearsay of a confidential informant, who had never before assisted the police in narcotics investigations, and there was no other independent evidence giving rise to probable cause that Appellant was engaged in drug trafficking or other criminal activity?

2. Whether the [trial] court abused its discretion in denying Appellant's motion to disclose [the CI?]

Appellant's Brief, 5.

In addition, to these two questions, Appellant provides separately enumerated argument for a third question; whether the trial court abused its discretion in denying Appellant's motion to dismiss charges pursuant to Pa.R.Crim.P. 704?[2] *See* Appellant's Concise Statement of Questions Presented, 4/2/24, 2; Trial Record, 188.

_____

[2] Appellant does not include this or any third question in the Statement of Questions Presented in violation of the Pennsylvania Rules of Appellate Procedure. *See* Pa.R.Crim.P. 2116(a). We could deem the issue waived. *See* **_Commonwealth v. Hodge_**, 144 A.3d 170, 172 n.4 (Pa. Super. 2016) ("because Appellant failed to include this issue in his statement of questions
*(Footnote Continued Next Page)*

In his first issue, Appellant raises a challenge to the existence of probable cause in the search warrant, a so-called "four corners challenge." N.T. Suppression, 10/14/23, 9. He argues that there was no corroborative evidence presented to confirm that Appellant sold narcotics to the CI or that the CI was reliable. **See** Appellant's Brief, 14-15. He also argues that the "the evidence which was the basis for the issuance of the search warrant was pure hearsay." **See id.**, 15. He asserts that "the search warrant does not state the date and times of the alleged four controlled transactions with specificity" and that the sales occurred in a place of business where any of "several employees and customers" could have been involved. **Id.** Therefore, he concludes, under the totality of he circumstances, the warrant was "insufficient to establish a reasonable probability that [he] sold drugs to the CI. **Id.**

"At a suppression hearing, 'the Commonwealth has the burden of establishing by a preponderance of the evidence that the evidence was properly obtained.'" **Commonwealth v. Heidelberg**, 267 A.3d 492, 498 (Pa. Super. 2021) (*en banc*) (quoting **Commonwealth v. Galendez**, 27 A.3d 1042, 1046 (Pa. Super. 2011) (*en banc*)). In a four corners challenge, "no evidence shall be admissible to establish probable cause other than the affidavits provided" to the issuing authority. Pa.R.Crim.P. 203(D);

_____

presented, it is waived); Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby"). We decline to do so because our review is not hindered by the omission. Appellant included the question in his Rule 1925(b) statement and briefed it in a separately enumerated section of his brief. Most importantly, the trial court addressed the claim on the merits.

*Commonwealth v. Shackelford*, 293 A.3d 692, 698 (Pa. Super. 2023), *appeal denied*, 313 A.3d 150 (Pa. 2024) ("Our review of a challenge to a search warrant based on an affidavit of probable cause is limited to the information within the four corners of the affidavit") (internal quotation marks omitted).

> Thus, a reviewing court may not conduct a *de novo* review of the issuing authority's probable cause determination but, instead, is tasked simply with the duty of ensuring the issuing authority had a substantial basis for concluding that probable cause existed. Unless the issuing authority had no substantial basis for its decision, a reviewing court must affirm.
>
>> The existence of probable cause is measured by examining the totality of circumstances. Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he [or she] has reasonably trustworthy information are sufficient in and of themselves to warrant a [person] of reasonable caution in the belief that a search should be conducted. A magisterial district judge, when deciding whether to issue a search warrant, must make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit ... including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Shackelford*, 293 A.3d at 698–99 (internal citations and quotation marks omitted). In addition, the Pennsylvania Supreme Court has held that:

> … a determination of probable cause based upon information received from a confidential informant depends upon the informant's reliability and basis of knowledge viewed in a common sense, non-technical manner. Thus, an informant's tip may constitute probable cause where police independently corroborate the tip, **or** where the informant has provided accurate information

of criminal activity in the past, **or** where the informant himself participated in the criminal activity.

***Commonwealth v. Clark***, 28 A.3d 1284, 1288 (Pa. 2011) (emphasis in original, internal citations omitted).

Here, the Commonwealth moved the search warrant into the record with the attached affidavit. N.T. Suppression, 10/14/23, 10. The affiant was Detective Keith. In summary, the detective related that within 30 days of the application for the warrant:

- He spoke with a confidential informant, who stated Appellant "sells marijuana and methamphetamine to his customers" from Appellant's auto shop and retrieves the controlled substances from his desk or car;

- The CI identified a photograph of Appellant as the person selling marijuana and methamphetamine from his auto shop;

- The CI conducted two controlled purchases of marijuana in which the CI contacted Appellant to ensure he was at the auto shop, was searched by Detective Keith to confirm the CI was free of money and controlled substances, was given money by Detective Keith, went directly into the auto shop without meeting anyone, returned to Detective Keith within five to ten minutes without meeting anyone, and turned over an amount of marijuana consistent with the amount of money provided by the Detective Keith and reported Appellant conducted the transaction;

- The CI conducted one controlled purchase of marijuana in which the CI contacted Appellant to ensure he was at the auto shop, was searched

by Detective Keith to confirm the CI was free of money and controlled substances, was given money by Detective Keith, went directly into the auto shop without meeting anyone, within two minutes of the CI entering the shop, Appellant left his shop and went to his car and then returned to the CI, the CI then returned to Detective Keith within five to ten minutes without meeting anyone, and turned over an amount of marijuana consistent with the amount of money provided by Detective Keith and reported Appellant conducted the transaction.

*See* Search Warrant, Affidavit, 2-4; Trial Court Record, 144-145.

In addition, within 48 hours of the application for the search warrant, the detective met with the CI to conduct a controlled purchase of methamphetamine. The CI contacted Appellant to ensure he was at the auto shop. The detective then searched the CI to confirm the CI was free of money and controlled substances and provided the CI with money. The CI went directly into the auto shop without meeting anyone. The CI then returned to the detective within 10 minutes without meeting anyone. The CI turned over an amount of methamphetamine that was consistent with the amount of money provided by the detective and reported that Appellant conducted the transaction. *See* Search Warrant, Affidavit, 4; Trial Court Record, 145.

After its review of the search warrant, the suppression court found that a "the affidavit of probable cause clearly sets forth that there is much more than a fair probability existing that contraband or evidence of a crime will be found in [Appellant's] place of business." Trial Court Opinion, 7/15/24, 5.

- 11 -

We agree with the court's legal conclusion. The search warrant set forth that the detective conducted four controlled purchases of controlled substances, three within 30 days and one within two days of the application for a search warrant, corroborating the informant's information that Appellant sold controlled substances from his place of business. The warrant thereby provided within its four corners a substantial basis to find that probable cause existed for the search. *See Commonwealth v. Hawkins*, 45 A.3d 1123, 1129 (Pa. Super. 2012) (holding that search warrant was supported by probable cause where a *single* "controlled buy had been completed, yielding crack cocaine from 829 Maple Street, [and] the CI was willing to cooperate in a second controlled buy within the 48–hour period"); *Commonwealth v. Gutierrez*, 969 A.2d 584, 589–90 (Pa. Super. 2009) (recitation of a *single* "controlled buy at 657 Clinton Street further bolstered the reliability of the information supplied by the [confidential informant] that Appellant was dealing drugs from that location … established a fair probability that drugs would be located in 657 Clinton Street"), *disapproved on other grounds by Commonwealth v. Hanson*, 82 A.3d 1023, 1038 (Pa. 2013).[3] Indeed, this

_____

[3] The Pennsylvania Supreme Court disapproved of the expansive interpretation in *Gutierrez* of the term "close proximity" in applying a formerly applicable mandatory minimum sentence for a drug trafficking conviction while in possession of, or "close proximity" to, a firearm. *Commonwealth v. Hanson*, 82 A.3d 1023, 1038 (Pa. 2013) (interpreting 42 Pa.C.S. § 9712.1, prior to it being declared unconstitutional under *Alleyne v. United States*, 570 U.S. 99 (2013), in *Commonwealth v. Newman*, 99 A.3d 86, 98 (Pa. Super. 2014)).

Court held there was "abundant probable cause" to search a defendant's residence where the affidavit to a search warrant recited that based on an informant's tip, the police conducted a *single* controlled buy of heroin from the defendant at his home within 48 hours of the application for the warrant. ***Commonwealth v. Johnson***, 517 A.2d 1311, 1315-16 (Pa. Super. 1986).

Although the affidavit here refers to the CI as being "reliable," we note that it provides no information demonstrating such reliability in the past. **See** Search Warrant, Affidavit, 1-2; Trial Court Record, 142-143. Nonetheless, the remainder of the affidavit, describing the four controlled purchases of controlled substances from Appellant's place of business, both corroborates and confirms the CI's information that "[Appellant] sells marijuana and methamphetamine and will hand deliver marijuana and methamphetamine to [Appellant's] customers at Jay Clark's Automotive and Diagnostic Center [at] 4435 Bethel Road" in Upper Chichester, Pennsylvania. **Id**.

The information within the warrant more than adequately confirmed the reliability of the CI's information. As in ***Clark***, the police arranged and conducted a purchase of a controlled substance with the CI that was consistent with the CI's information. Unlike ***Clark***, however, the officers here repeated a controlled purchase three more times. Thus, there was more definitive corroboration of the CI's information here than in ***Clark***, in which the Supreme Court held that the "totality of the circumstances … included the fact that the police corroborated significant details of the informant's tip by conducting and observing, a day before they applied for the search warrant, a controlled buy

of narcotics that dovetailed precisely with the information the CI had provided." **Clark**, 28 A.3d at 1290-91. Therefore there was "probable cause to search the residence" in **Clark** and the Appellant's place of business here. **Id.** at 1291.

Appellant's claim that the search warrant does not specify who sold the controlled substances to the CI, and therefore, anyone in the shop could have done so, is explicitly contradicted by the affidavit, which recites that the CI informed Detective Keith that Appellant sold the controlled substance to the CI in each of the four controlled purchases. Similarly unavailing is Appellant's additional assertion that the warrant was based on "pure hearsay." Appellant's Brief, 15. The police conducted four controlled purchases of controlled substances from the auto shop. Such evidence is not hearsay. That the CI told the officer Appellant had conducted the sales is hearsay. However, "[h]earsay information is sufficient to form the basis of a search warrant as long as the issuing authority has been provided with sufficient information to make a 'neutral' and 'detached' decision about whether there is a fair probability that contraband or evidence of a crime will be found in a particular place." **Commonwealth v. Huntington**, 924 A.2d 1252, 1255 (Pa. Super. 2007). There was ample information for a neutral and detached magistrate to decide there was a fair probability that contraband or evidence of drug trafficking would be found in the auto shop after the police conducted four controlled purchases of marijuana and methamphetamine from the location. Accordingly,

we affirm the suppression court's denial of Appellant's motion to suppress physical evidence.

In his second issue, Appellant alleges the trial court abused its discretion by denying his motion to produce the CI. **See** Appellant's Brief, 16-18. He contends the identity of the CI was material "to whether [he] made four controlled narcotics sales to the Delaware County Drug Task Force[.]" **Id.**, 18. He also argues this case is controlled by **Commonwealth v. Carter**, 233 A.3d 284 (Pa. 1967).

"Our standard of review of claims that a trial court erred in its disposition of a request for disclosure of an informant's identity is confined to abuse of discretion." **Commonwealth v. Jordan**, 125 A.3d 55, 62 (Pa. Super. 2015) (*en banc*) (quoting **Commonwealth v. Washington**, 63 A.3d 797, 801 (Pa. Super. 2013)). The Commonwealth has a "qualified privilege to maintain the confidentiality of an informant in order to preserve the public's interest in effective law enforcement." **Commonwealth v. Bing**, 713 A.2d 56, 58 (Pa. 1998) (citation omitted). "[B]efore the discretion of the trial court to order disclosure can be exercised, the defendant must establish that the CI's identity is material to the preparation of a defense and that the request is reasonable." **Jordan**, 125 A.3d at 63. **See also** Pa.R.Crim.P. 573(B)(2)(a)(i) (discovery of the names and addresses of eyewitnesses is discretionary with the trial court "upon a showing that they are material to the preparation of the defense, and that the request is reasonable").

If materiality and reasonableness are proven, then the courts must balance the public interest in the police's ability to obtain information against the defendant's right to prepare his defense. In this connection, we consider the crime, the potential defense, and the significance of the CI's testimony. The scales tip in favor of disclosure if the Commonwealth will be relying on police testimony based on a single observation. If other proof corroborates a police officer's testimony, disclosure is not mandated. Furthermore, the safety of the confidential informant can be a controlling factor in determining whether to reveal a source's identity.

*Jordan*, 125 A.3d at 63.

On the same day as the hearing on Appellant's motion to compel production of the CI, the Commonwealth withdrew its motion to present testimony at trial about the four controlled purchases. N.T. Suppression, 10/14/23, 3. Appellant argued that the methamphetamine found pursuant to the search warrant was "a very small amount," which would typically be for personal use. *Id.*, 19. Therefore, he argued, to prove Appellant possessed a controlled substance with intent to deliver, the Commonwealth also alleged "he made four prior sales to" to the CI. *Id.* The trial court pointed out that the Commonwealth had withdrawn its motion and stated it would not introduce testimony of the controlled purchases at trial. *Id.*, 19-20. Accordingly, the court ruled that Appellant, "at a minimum, failed to create a credible nexus between a viable defense theory and this informant's helpfulness in establishing a defense." Trial Court Opinion, 7/15/24, 6. *See Commonwealth v. Roebuck*, 681 A.2d 1279, 1283 (Pa. 1996) ("Only after a showing by the defendant that the information sought is material and the

- 16 -

request reasonable is the trial court called upon to exercise its discretion to determine whether the information is to be revealed").

Appellant continues to contend on appeal that the identity of the CI was material "to whether [he] made four controlled narcotics sales to the Delaware County Drug Task Force[.]" *See* Appellant's Brief, 18. He does so without acknowledging that no evidence of the controlled purchases was introduced at trial. Instead, he argues that this case is controlled by *Commonwealth v. Carter*, 233 A.2d 284 (Pa. 1967).

In *Carter*:

> … the prosecution's principal witness was Norton Wilder, a Philadelphia policeman. Wilder testified that, while acting as undercover agent on October 18, 1965, he was introduced to Carter by an informer and that [Carter] sold to the informer in Wilder's presence and for Wilder $36.00 worth of heroin. LaForrest Russell, an agent for the Federal Bureau of Narcotics, testified that, while sitting in a car parked a half block away, he observed Wilder, [Carter] and the informer in conversation at the time and place of the alleged sale. Russell stated that although he was unable to see the narcotics transaction, he did recognize Carter. Between October 18, 1965[,] and [Carter's] arrest on December 15, 1965[,] neither Wilder nor Russell had further contact with [him] as far as the record shows. Thus the identification of [Carter] by both witnesses was based solely on a single meeting.

*Carter*, 233 A.2d at 285–86. Moreover, the "defense consisted solely of [Carter's] claim of mistaken identity, *i.e.*, that Carter had not sold narcotics during the time in question and had never met Officer Wilder prior to his arrest." *Id.* at 286. It follows that in *Carter*, "it may hardly be gainsaid that disclosure of the informer's identity would be relevant and helpful to the defense." *Id.* at 287.

Here, the opposite is true. The jury was neither informed about the four prior controlled purchases by the CI nor that the CI identified Appellant. Instead, the evidence presented to the jury was acquired during the execution of the search warrant, or after the execution of the search warrant, without reference to the CI or the controlled purchases. Appellant was identified by multiple officers and on the video as present behind the desk where the controlled substances were found when the officers executed the warrant. The four controlled purchases to the CI were not part of the case against Appellant, whereas in *Carter*, the trial was focused on the sale made by Carter to the informant. Accordingly, *Carter* is inapplicable here. The CI's identification of Appellant as the seller during the investigation was immaterial to the testimony at trial or any defense raised. Appellant has presented "no convincing argument … as to what defenses might have been aided by the informant's availability." *Commonwealth v. Davis*, 465 A.2d 669, 672 (Pa. Super. 1983) (holding that disclosure of CI was not required where, in part, a mistaken identity defense was not presented). We find the trial court did not abuse its discretion by denying Appellant's motion to compel production of the CI.

Appellant's third issue alleges the trial court abused its discretion by denying his motion to dismiss all charges under Pa.R.Crim.P. 704. *See* Appellant's Brief, 18-20. Appellant argues that "there was no good cause for the delay in sentencing, where it stemmed from the unavailability of the [MHE] and [PSI] due to administrative breakdown," and "the delay in sentencing was

extremely prejudicial to Appellant, where he enjoyed pre-trial bail and was incarcerated immediately after his conviction by the jury." ***Id.***, 19.

"[W]hether discharge is required when sentencing occurs after the 90 days under Rule 704 presents a mixed question of fact and law." ***Commonwealth v. Neysmith***, 192 A.3d 184, 192 (Pa. Super. 2018). "[W]e defer to the trial court's judgment on this issue of alleged undue delay and shall reverse only for an abuse of discretion." ***Id.***

In relevant part, Pa.R.Crim.P. 704(A) states:

(1) Except as provided by Rule 702(B), sentence in a court case shall ordinarily be imposed within 90 days of conviction or the entry of a plea of guilty or *nolo contendere*.

(2) When the date for sentencing in a court case must be delayed, for good cause shown, beyond the time limits set forth in this rule, the judge shall include in the record the specific time period for the extension.

Pa.R.Crim.P. 704(A)(1-2). The official comment to the rule further states: "Under paragraph (A)(1), sentence should be imposed within 90 days of conviction or the entry of a plea of guilty or *nolo contendere*, unless the court orders a psychiatric or psychological examination pursuant to Rule 702(B). Comment to Pa.R.Crim.P. 704. "Such an order should extend the time for sentencing for only as much time as is reasonably required, but in no event should sentencing be extended for more than 30 days beyond the original 90-day limit." ***Id.***

In ***Commonwealth v. Anders***, 725 A.2d 170, 173 (Pa. 1999), the Pennsylvania Supreme Court held that in evaluating a Rule 704 motion for

discharge, a defendant must demonstrate actual prejudice. **See Commonwealth v. Still**, 783 A.2d 829, 830 n.1 (Pa. Super. 2001) (appropriate remedy for violation of Rule 704 is discharge *only* when the defendant can show prejudice due to the delay). Whether discharge is appropriate relief, the trial court should consider: (1) the length of the delay falling outside Rule 704's 90–day–and–good–cause provisions; (2) the reason for the improper delay; (3) the defendant's timely or untimely assertion of his rights; and (4) any resulting prejudice to the interests protected by his speedy trial and due process rights. **Anders,** 725 A.2d at 173.

"A Pa.R.Crim.P. 704 motion seeks to redress individualized harm arising from untimely proceedings. Rather than mechanically applying a fixed, 90–day period for sentencings, [the Supreme Court's leading case] instructs common pleas courts to evaluate amorphous concepts such as 'length of delay,' 'good cause,' and 'prejudice.'" **Neysmith**, 192 A.3d at 192. "These inquiries are case-specific and fact-intensive … and the trial judges sit in the best position to determine the causes and impacts of delays in their own courtrooms." **Id.** "[A] defendant who is sentenced in violation of [prior version of Rule 704] is entitled to a discharge only where the defendant can demonstrate that the delay in sentencing prejudiced him or her." **Anders**, 725 A.2d at 173; **see Commonwealth v. Null**, 186 A.3d 424, 433 (Pa. Super. 2018) (same).

Here, the sentencing proceeding was held 117 days after Appellant was convicted. Appellant moved to dismiss all charges under Rule 704. **See**

- 20 -

Appellant's Motion to Dismiss, 3/8/24; Trial Court Record, 166-168. Appellant argued that the delay beyond the 90-day date was because of an "administrative breakdown" and therefore "without just cause." **Id.** at ¶ 8; Trial Court Record, 167-168; **see also** N.T. Sentencing, 3/12/24, 4. His only assertion of prejudice was that he was denied his right to a speedy sentencing under the rule. **See** Appellant's Motion to Dismiss, 3/8/24, ¶ 9; Trial Court Record, 168; **see also** N.T. Sentencing, 3/12/24, 6 ("I will argue that there is clearly prejudice where my client has a right under the statute").

The sentencing court denied the motion. N.T. Sentencing, 3/12/24, 7-8; **see** Trial Court Record, 176. As the court explained in its written opinion:

> In the instant case [Appellant] was sentenced only 27 days past the 90[-]day requirement. This … *de minimis* delay was due to an inadvertent clerical error. Moreover, [Appellant] has failed to demonstrate actual prejudice.

Trial Court Opinion, 7/15/24, 3.

The cause of the delay was an unfortunate error in the preparation of two reports necessary for sentencing. "Rule 704 [is not] aimed at addressing or eliminating clerical error." **Commonwealth v. Diaz**, 51 A.3d 884, 889 (Pa. Super. 2012) (citation omitted). The additional time was justified by the need for a PSI and MHE at sentencing, and the sentencing nonetheless was held within the 30-day additional period applicable where, as here, the court had ordered an MHE. **See Anders**, 725 A.2d at 172 (discussing prior version of Rule 704 and stating that good cause for the delay would suffice). The trial

court corrected the error as soon as it came to light and expeditiously scheduled and held the sentencing hearing thereafter.

Fatal to Appellant's present claim was his failure to demonstrate any prejudice from that additional 27 days of delay. "Prejudice should not be presumed by the mere fact of an untimely sentence. Our approach has always been to determine whether there has in fact been prejudice, rather than to presume prejudice exists." *Diaz*, 51 A.3d at 889 (citation omitted).

Appellant's assertion that having been on bail prior to trial made the delay of sentencing prejudicial to him is insufficient to warrant the relief he requests. He does not provide any connection between the fact of pre-trial bail and his presumption of prejudice from a 27-day delay in sentencing. *See Commonwealth v. Still*, 783 A.2d 829, 832 (Pa. Super. 2001) (appellant's assertion that "there was without question some resulting prejudice to the defendant's interests" is a presumption of prejudice rejected by the Supreme Court). The sort of prejudice that might warrant a discharge would have been the loss of a witness or other evidence that could have been presented at sentencing, *Null*, 186 A.3d at 433, none of which was alleged, much less proven, by Appellant. Because the trial court found Appellant suffered no prejudice, and we discern none, Appellant was not entitled to discharge. *Anders*, 725 A.2d at 173; *Null*, 186 A.3d at 433. Therefore, the trial court did not abuse its discretion by denying that relief.

Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>6/23/2025</u>