J-S11043-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DONTAE RAMONE PATRICK | : | |
| | : | |
| Appellant | : | No. 758 WDA 2020 |

Appeal from the Judgment of Sentence Entered February 19, 2020
In the Court of Common Pleas of Beaver County Criminal Division at
No(s):  CP-04-CR-0000557-2019

BEFORE:   STABILE, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED: APRIL 30, 2021**

Appellant, Dontae Ramone Patrick, appeals from the aggregate judgment of sentence of four to nine years of confinement, which was imposed after his jury trial conviction for persons not to possess, use, manufacture, control, sell or transfer firearms ("possession of firearm prohibited").[1]  We affirm on the basis of the trial court opinion.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 6105(a)(1).

In its opinion, the trial court fully and correctly set forth the relevant facts and procedural history of this case. *See* Trial Court Opinion, dated September 21, 2020, at 1-16. Therefore, we have no reason to restate them.[2]

Appellant presents the following issues for our review:

1.) Whether the [t]rial [c]ourt erred in denying the Appellant, Dontae Patrick's, Pre-trial Motion to Suppress. The firearm seized as evidence in this case should have been suppressed due to the unreliability of the confidential informant and the materially defective affidavit of probable cause attached with the search warrant. Further, the aforementioned affidavit of probable cause was based on "stale" information. This "stale" information should have caused the Trial Court to find the search warrant to be unconstitutional.

2.) Whether the [t]rial [c]ourt erred by overruling the Appellant's objection to the Commonwealth's peremptory strike of Potential Juror No. 1 - 105. The Appellant established, *prima facially*, that the circumstances of the peremptory strike inferred a strike based on race. The record does not reflect that the Commonwealth established a racially neutral reason for the aforementioned peremptory strike.

3.) Whether the [t]rial [c]ourt erred by sustaining the Commonwealth's objection during trial relating to the Appellant's cross-examination of the arresting officer as that cross-examination pertained to missing witnesses.

4.) Whether the Commonwealth presented sufficient evidence to prove the elements of Possession of [] Firearm Prohibited.

5.) Whether the jury's verdict was against the weight of the evidence presented by the Commonwealth at trial.

Appellant's Brief at 3.

---

[2] Appellant filed post-sentence motions, which were denied on June 24, 2020. On July 22, 2020, Appellant filed this timely direct appeal. Appellant filed his statement of errors complained of on appeal on August 18, 2020. The trial court entered its opinion on September 21, 2020.

We begin by considering our standards of review for each specific issue raised by Appellant. "In reviewing the denial of a suppression motion, our role is to determine whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Yim*, 195 A.3d 922, 926 (Pa. Super. 2018) (citations omitted).

"The decision whether to disqualify a venireman is within the discretion of the trial court and will not be disturbed on appeal absent a palpable abuse of that discretion." *Commonwealth v. Ingber*, 531 A.2d 1101, 1103 (Pa. 1987) (citations omitted); *see also Commonwealth v. Wiggins*, No. 1668 EDA 2015, unpublished memorandum at 11-12 (Pa. Super. filed July 19, 2019) (*en banc*).[3]

"The determination of the scope and limits of cross-examination are within the discretion of the trial court, and we cannot reverse those findings absent a clear abuse of discretion or an error of law." *Commonwealth v. Handfield*, 34 A.3d 187, 210 (Pa. Super. 2011) (citations omitted).

> This Court's standard for reviewing sufficiency of the evidence claims is as follows:
>
> > We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been

---

[3] Pursuant to Pa.R.A.P. 126(b)(2) (effective May 1, 2019): "Non-precedential decisions . . . may be cited for their persuasive value."

> established beyond a reasonable doubt, the sufficiency of
> the evidence claim must fail.
>
> ***Commonwealth v. Rodriguez***, 141 A.3d 523, 525 (Pa.Super.
> 2016) (quoting ***Commonwealth v. Tarrach***, 42 A.3d 342, 345
> (Pa.Super. 2012)).

***Commonwealth v. Izurieta***, 171 A.3d 803, 806 (Pa. Super. 2017).

Finally, "[w]hen reviewing a challenge to the weight of the evidence, we review the trial court's exercise of discretion." ***Commonwealth v. Roane***, 204 A.3d 998, 1001 (Pa. Super. 2019) (citation omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Mitchell P. Shahen, we conclude that Appellant's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of those questions. ***See*** Trial Court Opinion, dated September 21, 2020, at 16–42 (finding: (1)(a) the facts averred in the affidavit of probable cause in the current case concerning the execution of the controlled buys are analogous to those in ***Commonwealth v. Dean***, 693 A.2d 1360 (Pa. Super. 1997) (basis for search warrant was information supplied by a confidential informant who had made a controlled buy from the appellant less than 48 hours prior to the execution of the search warrant), and, since this Court found the confidential informant in ***Dean*** to be reliable, the informant in the current action must be found to be reliable as well; (b) based upon the totality of circumstances, the affidavit of probable cause set forth sufficient information to provide a substantial basis for the issuing authority to conclude that probable cause existed to issue the search warrant and that the warrant was not stale;

(2) Appellant failed to make out a case of purposeful discrimination in the jury selection and the proper course of action in this instance was to deny the challenge under **Batson v. Kentucky**, 476 U.S. 79 (1986);[4] (3) the trial court was justified in refusing to permit Appellant to continue to cross-examine the arresting officer with regard to SWAT team members who were present when the search warrant was executed and Appellant arrested, because counsel for the Appellant had made that same point and asked the same question with slightly different phrasing on a number of occasions; (4) viewed in the light most favorable to the Commonwealth, the prosecution presented sufficient evidence that Appellant violated possession of firearm prohibited; and (5) the direct and circumstantial evidence was not so ambiguous and uncertain that the jury verdict somehow shocks the conscience, and Appellant has thus not demonstrated that the guilty verdict was against the weight of the evidence). Accordingly, we affirm on the basis of the trial court's opinion. The parties are instructed to attach the opinion of the trial court in any filings referencing this Court's decision.

Judgment of sentence affirmed.

---

[4] In **Batson**, the United States Supreme Court "upheld the constitutional limitations on a prosecutor's use of peremptory challenges to purposely exclude members of a defendant's race from participating as jurors." **Commonwealth v. Dinwiddle**, 542 A.2d 102, 104 (Pa. Super. 1998).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  4/30/2021

IN THE COURT OF COMMON PLEAS OF BEAVER COUNTY,
PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA  :
:  No. 557 of 2019
vs.  :
:  758 WDA 2020
DONTAE RAMONE PATRICK  :

Shahen, Mitchell P.                    SEPTEMBER 21, 2020

## RULE 1925 (a) OPINION

## INTRODUCTION

Dontae Ramone Patrick appeals from the February 19, 2020 judgment of sentence entered by the Court of Common Pleas of Beaver County following his conviction in a jury trial of possession of a firearm by a prohibited person[1]. The trial court sentenced Appellant to four to nine years' incarceration. The Appellant filed post sentence motions and by order dated June 24, 2020, the post sentence motions were denied and this appeal to the Superior Court of Pennsylvania followed. Appellant filed a timely Notice of Appeal, and he complied with the trial court's order to file a Pa. R.A.P. 1925(b) concise statement of errors complained of on appeal. This opinion is issued under the mandate of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 1925(a)(1).

---

[1] 18 Pa.C.S.A. § 6105(a)(1).

1 | P a g e

# PROCEDURAL HISTORY

The relevant procedural history of this case is as follows. By criminal information dated February 1, 2019, the Appellant was charged as follows, one (1) Count of Possession of a Firearm Prohibited (2nd Degree Felony)[2]; one (1) Count of Receiving Stolen Property (2nd Degree Felony)[3]; and one (1) Count of Intentional Possession of Controlled Substance by Person Not Registered (Ungraded Misdemeanor)[4]. Each of these charges stemmed from a search warrant executed upon the premises located at 1108 Main Street, Aliquippa, Pennsylvania on February 1, 2019.

Appellant filed an Omnibus Pre-Trial Motion on July 5, 2019. In the motion, Appellant requested the suppression of all evidence recovered from his home at the time of the execution of the search warrant on February 1, 2020. A hearing on this motion was held on October 1, 2019, at which time the Commonwealth presented the testimony of Special Agent Daniel Jena and offered the search warrant as evidence. The trial court denied the Omnibus Pre-Trial Motion to Suppress Evidence on the record at the time of the suppression hearing. Findings of fact were also made on the record at the conclusion of the hearing.

Prior to the commencement of jury selection, the Commonwealth withdrew Count Three (3) Intentional Possession of a Controlled Substance. Therefore, the trial commenced on the remaining two (2) charges of Possession of a Firearm Prohibited and Receiving Stolen Property. Jury Selection commenced on January 7, 2020 and the trial

---

[2] 18 Pa. C.S.A. § 6105(c)
[3] 18 Pa. C.S.A. § 3925(a)
[4] 35 P.S. 780-113(a)(16)

court conducted trial from January 8, 2020 through January 9, 2020. After the Commonwealth rested, the Appellant made a motion for judgment of acquittal as to Count 2, Receiving Stolen Property, which was granted by the trial court. Thereafter, on January 9, 2020, the Jury returned a verdict finding Appellant guilty of the only remaining Count contained in the Information; Possession, or Use or Control of Firearm Prohibited. The Jury also found, beyond a reasonable doubt, that the firearm was loaded at the time when it was possessed by the Appellant. Appellant was sentenced on February 19, 2020 to forty-eight (48) to one hundred eight (108) months in a State Correctional Institution on the only remaining count of Possession, or Use or Control of Firearm Prohibited.

Following sentencing, the Appellant filed a Post-Sentence Motion for Relief and then a Supplemental Motion for Post-Sentence Relief. The trial court denied Appellant's motions without a hearing on June 24, 2020.

The Appellant filed the instant Appeal on July 22, 2020. He was ordered to file a Concise Statement of Matters Complained of on Appeal on July 28, 2020. The Appellant filed a timely Concise Statement on August 18, 2020.

# FACTUAL BACKGROUND

## Pre-Trial

The Application for the Search Warrant was signed by the Honorable Kim Tesla on February 1, 2020.[5] The affidavit of probable cause to that search warrant, in pertinent part, provided: [i]n the early weeks of December 2018 the affiant, Agent Jena, received information from a reliable Confidential Informant ("CI") regarding a male selling drugs in and around the City of Aliquippa.[6] Additional investigation revealed the identity of the Appellant, Dontae Ramone Patrick, with a residence of 1108 Main Street, Aliquippa, Pennsylvania, 15001.[7] On or about January 15, 2019, Beaver County Drug Task Force Agents (hereinafter "Agents") conducted a controlled purchase of crack cocaine outside Appellant's residence utilizing the CI.[8] A second controlled purchase of crack cocaine was conducted outside the Appellant's residence utilizing the same CI.[9] The search warrant was drafted with multiple incomplete sentence fragments where it appeared that the affiant started the substantive content of a number of paragraphs in the affidavit of probable cause in the middle of the thought that each such paragraph was intended to convey.

The Appellant filed an Omnibus Pre-Trial Motion which contained a motion to suppress evidence that was seized at the Appellant's home pursuant to the February 1, 2019 search warrant. The Appellant contended that the information contained in the

---

[5] Commonwealth Exhibit 1, Omnibus Hearing 10/1/2019 (Hereinafter, "SH, Ex 1")
[6] Id. at ¶ 4.
[7] Id. at ¶ 5.
[8] Id. at ¶¶ 7-20.
[9] Id. at ¶¶ 21-29.

4 | P a g e

information in the affidavit of probable cause was stale and that the search warrant was materially defective. Paragraph Seven (7) through paragraph twenty (20) of the affidavit of probable cause summarized a controlled purchase between the Appellant and a confidential informant that occurred on January 15, 2019. The first claimed defect arose out of the content of paragraphs twenty-one (21) and twenty-two (22) of the affidavit of probable cause and, the first word of paragraph twenty-three (23). Each of those paragraphs contained incomplete sentences that referenced an apparent second controlled purchase between the same confidential informant and the Appellant. The relevant information that was omitted from content of the affidavit of probable cause was the date of the second controlled purchase. The testimony at the October 2, 2019 suppression hearing by Agent Jena revealed that the information that was inadvertently left out of the affidavit of probable cause was that the second controlled purchase occurred on January 30, 2019.

The other defect concerned the allegations in the affidavit of probable cause regarding the first controlled purchase of January 15, 2019. Paragraphs seven (7) through thirteen (13) of the affidavit of probable cause summarized the events surrounding the January 15, 2019 controlled purchase that occurred between 1000 hours through 1158 on January 15, 2019 during the encounter with the confidential informant. Paragraphs fourteen (14) through nineteen (19) of the affidavit of probable cause recited the events that occurred after the 1158. The events referenced in paragraphs 14- 19 that occurred subsequent to the event that was noted to take place at 1158 were incorrectly

alleged to have occurred from 1103 hours to 1133 hours. The second defect related to this obvious incorrect time sequence.

During the suppression hearing, the Commonwealth relied the cotent to the first page of the application for search warrant where there is a box that is designated as "Date[s] of Violation." In that block on the February 1, 2019 search warrant application, Agent Jena wrote that the violations occurred within the past forty-eight (48) hours. The Commonwealth's contention and the on the record findings of the trial court were that the placing 48 hour time frame in the "Date of Violation" box sufficed to advise the issuing authority on the face of the search warrant application that the second controlled purchase occurred within 48 hours of the application for the search warrant.

At the conclusion of the October 2, 2019 hearing, the trial court found that the affidavit of probable cause contained enough information to support a probable cause determination by the issuing authority. The trial court's findings and conclusions were announced on the record and the suppression was denied.

## Jury Voir Dire

During the voir dire proceedings which occurred on January 7, 2020, an issue arose concerning a **Batson**[10] claim that was raised by the Appellant. This **Batson** issue concerned a potential juror who was identified as prospective Juror No. 1-105. Juror 1-105 was a female African American and the Appellant is a male African American. During voir dire of this prospective juror, she stated that she had a close friend who was charged as a defendant in a double homicide case that was filed and previously

---

[10] Batson v. Kentucky, 476 U.S. 79 (S. Ct. 1986)

prosecuted in Beaver County. The prospective juror summarized her friend's involvement in that case as such:

> Basically he got sentenced to 32 to 70 years because his cell phone was involved in a double homicide crime.[11]

She further stated that she was upset with the way the case ended but that she "accepted it for what it was because what else can you do?" She then testified that the experience of her friend's case would not cause her to "have any kind of … preconceived notion or any kind of apprehension to be on [the jury in this case] because of what happened in [her friend's case]."[12]

The prospective juror also answered the Juror Questionnaire inquiry number 9 concerning the likelihood that the juror would be less likely to believe the testimony of a police officer by responding affirmatively to that question. She explained the answer on her Juror Questionnaire form by saying that she personally witnessed on multiple occasions, including the prosecution of her friend for double homicide or "just being pulled over" herself "how law enforcement can just lie to basically to get to, get what they need out of something or somebody…"[13] During the direct exam of that prospective juror, she stated that she could follow the trial court's instructions regarding the manner in which all witnesses were to be considered. When counsel for the Appellant asked a follow-up question regarding the prospective juror's ability to

---

[11] Id. at pages 8-9.
[12] Id.
[13] Trial Notes of Testimony (Voir Dire proceedings) January 7, 2020 – Page 9.

appropriately consider the testimony of a police officer, she stated that she would keep an open mind and that she "would definitely listen to what he has to say." [14]

The prospective juror was also examined by the Assistant Beaver County District Attorney. He asked the potential juror toexplain her statement that the police officers lie to get what they want. She then recounted a personal story where the she and her friends were pulled over by a police officer and that the officer assumed that the prospective juror and her friends were doing something improper when, in fact, they were doing nothing illegal or improper. She then recounted how that officer then reported to another officer who arrived on the scene that the prospective juror and her friends were engaging in improper conduct and that second officer "automatically believed [the other officer] before even hearing our side of the story. [15] She then went on to say that in situations that she has observed police to be in, that she has observed police officers to have "lied or manipulated the truth to get a verdict or a conviction or anything of that sort". [16] However, she did state that she would be able to judge the testimony of Officer Jena without having her assessment of his potential testimony impacted by her negative experiences with law enforcement.

A **Batson** hearing was held immediately after the objection was made and the parties acknowledged that the prospective juror was a member of a cognizable racial group. The race neutral explanation offered by the Commonwealth for using a peremptory challenge was twofold. The first reason had to do with the prospective juror's

---

[14] Id. @ Page 10.
[15] Id. @ Page 13.
[16] Id.

8 | P a g e

relationship with the Defendant in the Beaver County double homicide case and the Commonwealth's perceived belief that the prospective juror was dissatisfied with the way that the justice system worked in that case. The second reason was the prospective juror's stated belief that the police officers would lie to form their cases and ultimately get convictions in those cases. The Commonwealth then noted that the main witness would be a police officer, and as such, the Assistant District Attorney felt that any person who believes that police officers lie to form their cases cannot be fair and impartial. It was for those two reasons that the Commonwealth attorney opined his belief that the prospective juror could not be a fair and impartial juror in the case.

The **Batson** objection made on behalf of the Appellant was overruled. The trial court found that there was a *prima facie* showing that the circumstances gave rise to an inference that the prosecutor struck the juror on account of race and then the burden then shifted to the Commonwealth to articulate a race neutral explanation for striking the prospective juror. The trial court found that the reasons offered by the Commonwealth, in particular the Commonwealth's concerns that the prospective juror perceived police officers to be liars, supported the Commonwealth's action in exercising a peremptory strike for that prospective juror.

## Trial

The trial on this matter commenced on January 8, 2020 and concluded on January 9, 2020. The case started when, on February 1, 2019, a search warrant was executed at

the Appellant's residence located at 1108 Main Street, Aliquippa, Pennsylvania.[17] Among the items seized that day from the home of the Appellant were a Taurus 9mm firearm, a Digiweigh Digital Scale, PA ID Card, Back of Rubber Bands, Bag of 13.4 g. of marijuana, two (2) smart phones, silver digital scale, and a box of sandwich bags.[18]

The Commonwealth called Pennsylvania Attorney General Narcotics Agent Daniel Jena to testify as to the events that occurred during the execution of the search warrant. The only other witness the Commonwealth presented was the registered owner of the firearm recovered at the Appellant's residence.

Agent Jena testified at the time of the execution of the search warrant the target of the investigation was the Appellant, Dontae Patrick.[19] The residence that was searched was 1108 Main Street, Aliquippa.[20] He testified that a SWAT team was utilized to secure the residence.[21] He indicated that when he personally entered the residence, the SWAT team had already detained everyone located inside the residence in the front living room.[22] The parties that were detained were the Appellant, Appellant's mother, Appellant's wife, and the Appellant's three children.[23] Agent Jena spoke with the Appellant in the kitchen of the residence[24]. During that conversation, the Appellant

---

[17] Search Warrant, Return of Service and Inventory.
[18] Id.
[19] Trial Transcript, 1/9/2020, p. 52 (hereinafter "TT2)
[20] Id.
[21] Id.
[22] Id.
[23] Id.
[24] Id.

advised Agent Jena that there was a firearm upstairs in the bedroom under the mattress[25] and that the Appellant "got it [firearm] off the street."[26]

Agent Jena testified that he did personally go into the bedroom.[27] He indicated that the room appeared to be used and that he was informed by other Agents that the Appellant's Pennsylvania Identification Card was located either on the nightstand or dresser.[28] Agent Jena stated that Agent Shawn Kriley assisted him with lifting up the mattress, and they located the firearm on top of the box spring.[29] The firearm recovered was a black Taurus 9mm with five (5) live rounds in the chamber.[30]

Agent Jena testified that he did advise the Appellant that a firearm was recovered in the bedroom and that his wife could also be charged in connection with the firearm.[31] Agent Jena testified that the Appellant responded stating that the firearm was his.[32] Agent Jena then asked the Appellant if he would be willing to write a statement to that effect and the Appellant then wrote out a short statement.[33] The following written statement was read into the record: "The cop came to my house for a cause I don't know, but they found a gun under the bed, which I told them it was mine."[34]

[25] Id. at 55-56.
[26] Id. at 62.
[27] Id.
[28] Id. at 58-59.
[29] Id. at 59.
[30] Id.
[31] Id. at 67-68.
[32] Id. at 68.
[33] Id. at 68-69.
[34] Id. at 74.

On cross-examination, Agent Jena was questioned regarding the procedure upon which the Agents gained entry into the residence.[35] Agent Jena testified that the SWAT team was utilized to gain entry in to the residence.[36] He indicated that prior to the time that the eight (8)[37] member SWAT team entered the house, a flash bang was thrown into the window of the house.[38] After the flash bang was used, the SWAT Agents used a ram to break the locks on the door and enter the residence.[39] The house was cleared by the SWAT team and all individuals located in the house were secured. After Agent Jena entered the home, he immediately went into the kitchen to set up his area.[40] Agent Jena advised that his search team consisted of an additional eight (8) agents.[41]

During the cross examination of Agent Jena, he was questioned on numerous occasions about the failure of the Commonwealth to have any of the other law enforcement officials who were involved in the execution of the search warrant testify at trial. At one point, Frank N. Martocci, counsel for the Appellant, stated that the other members of the search team could have been available to testify "to what you [Agent Jena] just testified about.[42]" On pages 120 and 121 of the Notes of Testimony of January 8, 2020, Mr. Martocci continued to point out that at least fifteen (15) other law enforcement officers were at the Appellant's home on the day of the search and that none of them were going to provide testimony for the Jury to hear. He repeatedly pointed out

---

[35] Id. at 78 *et seq.*
[36] Id. at 79.
[37] Id. at 82.
[38] Id. at 79-80.
[39] Id. at 83.
[40] Id. at 94.
[41] Id. at 95.
[42] Notes of Testimony of January 8, 2020 Trial - Page 98.

that those fifteen (15) other officers could have testified but that they were not available and he concluded his cross examination as follows:[43]

> **Mr. Martocci:** Okay. So like I said, of the one, being you, and then the 15 that are left, the other 15 aren't here in court. They never came here today; right?
>
> **Agent Jena: Correct.**
>
> **Mr. Martocci:** Okay. And these 15 other people had the opportunity to at one point in time observe everything from start to finish that was going on inside my client's house; right?
>
> **Agent Jena: See that's kind of like a broad question.**
>
> **Mr. Martocci:** Well –
>
> **Agent Jena: I can't really answer that.**
>
> **Mr. Martocci:** I mean they, they could be considered witnesses in other words, isn't that true, because they would have witnessed what happened inside that house; right?
>
> **Agent Jena: I am what, to what though? I mean you could –**
>
> **Mr. Martocci:** Whatever was going on.
>
> **Agent Jena: But I mean you, who are you going to call for what reasoning? You would, like I mean obviously I'm here because I was, I'm obviously the Affiant. I found the gun, but like a SWAT member, what would you call them for?**
>
> **Mr. Martocci:** Well, I understand that, and that's true. You were the one that took in the gun and you were the lead investigator on this case, but you would admit that other people that were there could have testified to their own activities because you were doing everything by yourself in there; right?
>
> **Agent Jena: Correct. Yeah. They could've.**

---

[43] Id. at 120 *et seq.*

**Mr. Martocci:** They could've?

**Agent Jena:** Uh-hum.

**Mr. Martocci:** But they're not?

**Agent Jena:** Correct.

**Mr. Martocci:** And since they're not here, these ladies and gentlemen here they're never going to hear from them; right?

**Agent Jena: Correct.**[44]

Agent Jena was subjected to re-cross examination and he was once again confronted with regard to what happened when the SWAT team entry was made into the residence.[45] Mr. Martocci was pointing out to Agent Jena that if the members of the SWAT team were brought to court to testify that they could provide testimony to the Jury concerning the exact actions taken by the SWAT team. Mr. Martocci then asked the following question about the SWAT team members who were not going to be called for testimony at trial.

> **Mr. Martocci:** And the reason you can't tell us any of that stuff is because the people who did it aren't here to testify. Like I said those people are witnesses. They could've came in here and said how it all went down, right, but they're not here? I'm talking about the SWAT team people; right?
>
> **Agent Jena:** Correct.
>
> **Mr. Martocci:** So these guys are never going to know; right?
>
> **Agent Jena: I think that's, that's a double-edged sword, Frank.**

---

[44] Id. at 120-122.
[45] Id. at 127 *et seq*

14 | P a g e

**Mr. Martocci:** Well, they're never going to know because --

**Agent Jena: I mean –**

**Mr. Martocci:** -- they're not here.

**Agent Jena: It has nothing to do with –**[46]

At that point, counsel for the Commonwealth objected on the basis that the Appellant had access to all the witnesses and that Mr. Martocci should not then be permitted to pursue that line of questioning any further. The Commonwealth's attorney also based his objection on relevance. During the ensuing argument on the objection, counsel for the Appellant stated "I'm not going to go much further with it anyway, but, because I think the points made. They didn't bring these people."[47] The objection was sustained primarily based upon the reason that there was no showing that these witnesses were unavailable to the Appellant.

The Commonwealth next called the registered owner of the firearm, Mark Stephen Jones, to testify that he reported the firearm as stolen.[48] Stipulations were read into the record regarding the Appellant's status as a person prohibited by law to possess a firearm on the date of the offense and that the firearm was operable and capable of being fired at the time it was found.[49] The Commonwealth rested and the Appellant presented no testimony. At the conclusion of the Commonwealth's case, the Trial court granted the

---

[46] Id.
[47] Id. @ 132.
[48] Id. at 149-151.
[49] Id. at 147-148.

Appellant's oral Motion for Judgment of Acquittal with regards to the Count of Receiving Stolen Property.[50]

## ISSUES

Appellant's concise statement contains five (5) issues for review which have been re-ordered and consolidated for ease of disposition.

1. Whether the trial court erred in denying the Appellant's pre-trial motion to suppress on October 2, 2019?

2. Was the evidence sufficient to support the conviction?

3. Was the verdict contrary to the weight of the evidence?

4. Whether the trial court erred in overruling the Appellant's objection to the Commonwealth's peremptory strike of Potential Juror No. 1-105?

5. Whether the tial court erred in sustaining the Commonwealth's objection to Appellant's questioning of Agent Jena regarding the Commonwealth's decision not to present the testimony of the SWAT team members who secured entry into the Appellant's home on the day of the search of that home?"

## ANALYSIS

### Motion to Suppress Items Seized

When a defendant files a motion to suppress and establishes standing, the Commonwealth is required to prove that it did not obtain the challenged evidence in violation of the defendant's rights. **Commonwealth v. West**, 834 A.2d 625, 629 (Pa. Super. 2003). The Commonwealth must prove by a preponderance of the evidence that

---

[50] Id. at 163-169.

the challenged evidence is admissible. **Commonwealth v. Smith,** 784 A.2d 182, 186 (Pa. Super. 2001).

In Pennsylvania, "the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect citizens from unreasonable searches and seizures." **Commonwealth v. Clemens,** 66 A.3d 373, 378 (Pa. Super. 2013) (internal alteration and quotation marks omitted). "Where there exists a reasonable expectation of privacy, Article I, Section 8 and the Fourth Amendment generally require police to obtain a warrant, issued by a neutral and detached magistrate and founded upon probable cause, prior to conducting a search or seizure of a person and/or a person's property, unless one of the few well delineated exceptions apply." **Commonwealth v. Loughnane,** 173 A.3d 733, 741 (Pa. 2017).

The affidavit in support of the application for the search warrant in the instant case was not well drafted. However, the duty of a reviewing court is to ensure that the issuing authority had a substantial basis for concluding that probable cause existed. **Commonwealth v. Singleton,** 603 A.2d 1072, 1073 (Pa. Super. Ct. 1992). The issuing authority is only required to find a fair probability of criminal activity based upon the four corners of the affidavit of probable cause and the determination that probable cause existed must be given deference. **Id.** "Probable cause is based on a finding of the probability, not a prima facie showing of criminal activity, and deference is to be accorded a magistrate's finding of probable cause." **Commonwealth v. Dean,** 693 A.2d 1360, 1365 (Pa. Super. Ct. 1997).

The standard for evaluating whether probable cause exists for the issuance of a search warrant is the "totality of the circumstances" test: the issuing authority must make a practical, common sense decision, whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. **Id**. The duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing] that probable cause existed." **Commonwealth v. Baker**, 513 Pa. 23, 26, 518 A.2d 802, 803–04 (1986) (citation omitted).

In making a probable cause determination, the reviewing court must limit the inquiry to the information within the four corners of the affidavit submitted in support of probable cause when determining whether the warrant was issued upon probable cause. **Commonwealth v. Arthur**, 62 A.3d 424, 432 (Pa. Super. 2013). Pennsylvania Rule of Criminal Procedure 203 provides, in relevant part, that:

> (B) No search warrant shall issue but upon probable cause supported by one or more affidavits sworn to before the issuing authority.... The issuing authority, in determining whether probable cause has been established, may not consider any evidence outside the affidavits.
>
> * * *
>
> (D) At any hearing on a motion for the [ ] suppression of evidence, or for suppression of the fruits of evidence, obtained pursuant to a search warrant, no evidence shall be admissible to establish probable cause other than the affidavits provided for in paragraph (B).

Pa.R.Crim.P. 203. However, it is clear that search warrant affidavits are to be read in a common sense and realistic fashion. **United States v. Ventresca**, 380 U.S. 102 (S.Ct.

1965); **Commonwealth v. Billock**, 289 A.2d 749 (Pa. Super. 1972). Furthermore, the affidavit is to be considered as a whole, **Commonwealth v. Bryant**, 372 A.2d 880 (Pa. Super. 1977), and a successful attack on part of it will not invalidate the warrant if enough remains to establish probable cause, **Commonwealth v. Tucker**, 384 A.2d 938 (Pa. Super. 1978).

## Reliability of the Confidential Informant

A defendant has the right to test the veracity of the facts recited in the affidavit of probable cause. **Commonwealth v. James**, 69 A.3d 180, 187 (Pa. 2013). "To rule otherwise, would permit police in every case to exaggerate or expand on the facts given to the magistrate merely for the purpose of meeting the probable cause requirement, thus precluding a detached and objective determination." **Commonwealth v. Hall**, 302 A.2d 342, 344 (Pa. 1973). Where the issuance of a warrant is based on information provided by a confidential informant, "[i]f the informant was reliable, the search warrant was issued with probable cause[;] if the informant was proven to be without reliability, the warrant was improperly issued." **Id.** at 345.

In this case, the probable cause affidavit refers to two "controlled buys" using the same confidential informant who obtained crack cocaine from the premises located at 1108 Main Street, Aliquippa, Pennsylvania. Both controlled buys referenced in the probable cause affidavit occurred when the confidential informant met with the Appellant at the property located at 1108 Main Street, Aliquippa. Both of these buys were made in a carefully controlled environment and each "controlled buy" was discussed in great

detail in the affidavit of probable cause. Both "controlled buys" were made after a telephone exchange with the Appellant.

The execution of the controlled buys establishes the reliability of the confidential informant or informants. **Commonwealth v. Dean**, 693 A.2d 1360, 1366, n. 4 (Pa. Super. Ct. 1997) (despite a lack of "facts in the affidavit that allege that the informant had been used in the past or that he had intimate knowledge of appellant, the fact that such information was corroborated by the police with a controlled buy provides substantial reliability").

In **Dean**, the defendant claimed that the search warrant used to gain entry to his residence was not supported by probable cause because the affidavit contained only "vague assertions by a confidential informant without setting forth the basis for the informant's knowledge and without providing for that informant's reliability...." **Id.** at 1365. The Superior Court concluded that the information in the affidavit established probable cause sufficient to support the issuance of the search warrant. **Id.** at 1366 & n. 4.

In **Commonwealth v. Hawkins**, 45 A.3d 1123, 1127 (Pa.Super.2012), the Court determined that an officer's affidavit set forth sufficient information to provide a substantial basis for a magistrate to conclude that probable cause existed to issue a search warrant after using a confidential informant to complete a controlled narcotics purchase. **Id.** The **Hawkins** Court held, however, that if probable cause is to be based, in part, on a controlled purchase, an officer must take "adequate precautions to ensure substantial reliability of the controlled buy [will] corroborate information already obtained." **Id.** at 1129. The search warrant in this case states that the officer was aware that the

20 | P a g e

confidential informant "provided information against their own penal interest; he/she has cooperated with law enforcement on a previous investigation that resulted in the seizure of illegal drugs and the arrest(s) of drug traffickers, has provided facts and details in this (and previous) investigation that have been independently corroborated by law enforcement."[51] The confidential informant identified the Appellant by his nickname, "Pat", and he/she further provided the address of the Appellant. The officer was able to verify that "Pat" was identified as the Appellant and the officer noted in the probable cause affidavit that he had prior knowledge that "Patrick has a criminal history including two prior convictions for Possession with Intent to Deliver a Controlled Substance (Felony) on 09/09/2004 and 07/22/2009."[52] This information is found to be sufficient additional information which was corroborated by the controlled buys that were summarized in the affidavit of probable cause.

Other cases have held that information provided by a confidential informant that is corroborated by a controlled buy support a finding of probable cause. See e.g. **Commonwealth v. Baker**, 615 A.2d 23 (Pa.1992) (Facts sufficient to establish probable cause for issuance of search warrant where informant's information implicating defendant as seller was corroborated by police officer's first-hand observations when he gave informant money to purchase cocaine and saw informant enter residence and return from residence with cocaine); **Commonwealth v. Luton**, 672 A.2d 819, 821 (Pa.Super.1996) (Police-conducted "controlled buy" sufficiently corroborated neighbors' observations

---

[51] SH, Ex. 1 at ¶ 4.
[52] Id. at ¶ 5.

21 | P a g e

alleging drug operations from defendant's home); **Commonwealth v. Johnson**, 517 A.2d 1311 (Pa.Super.1986) (Finding an abundance of probable cause where a controlled buy was conducted within 48 hours of the execution of the search wherein defendant left residence and met with informant who returned to police with drugs).

The facts recited in the warrant in this case are similar to those in **Dean**: within 48 hours before application for the warrant, a confidential informant was searched and found to be free of any controlled substance and money. The CI was given bills whose serial numbers had been recorded. The CI stated he or she would buy crack cocaine from Appellant by meeting him in the alley behind his residence located at 1108 Main Street, Aliquippa. The transactions took place and the affiant recovered crack cocaine from the informant on two occasions. Because of the similarity between the facts averred in the affidavit in this case and those in **Dean**, the execution of the controlled buys in this case is a factor that establishes the reliability of the confidential informant.

## Staleness

The Appellant also avers that the information contained within the search warrant was "stale" and contained material defects, thereby rendering the Search Warrant invalid. The staleness and defect issues are related in that Appellant argues that clerical errors that led to the failure to include the date of the second controlled purchase, January 30, 2019, in the sequential paragraphs of the affidavit of probable cause presented a factual circumstance to the issuing authority that referenced only a controlled purchase that

occurred on January 15, 2019, 17 days before the application for and issuance of the February 1, 2019 search warrant.

"The requisite probable cause [for a search warrant] must exist at the time the warrant is issued and be based on facts closely related in time to the date of issuance." **Commonwealth v. T. Jones**, 484 A.2d 1383, 1387 (Pa. 1984). "Settled Pennsylvania law establishes that stale information cannot provide probable cause in support of a warrant." **Commonwealth v. Janda**, 14 A.3d 147, 158 (Pa. Super. 2011). "There is no hard and fast rule regarding what constitutes stale information; such determinations must be made on a case-by-case basis." **Commonwealth v. Vergotz**, 616 A.2d 1379, 1382 (Pa. Super. 1992), **appeal denied**, 627 A.2d 179 (Pa. 1993). The court applies a reasonableness standard when it determines the time limits to be placed on search warrants. **Id.** "Importantly, age of the information supporting a warrant application is a factor in determining probable cause. If too old, the information is stale, and probable cause may no longer exist. Age alone, however, does not determine staleness. The determination of probable cause is not merely an exercise in counting the days or even months between the facts relied on and the issuance of the warrant. Rather, we must also examine the nature of the crime and the type of evidence." **Janda, supra**, at 158–59 (internal citations omitted). "Mere lapse of time between discovery of criminal activity and issuance of the warrant will not necessarily dissipate probable cause." **Commonwealth v. Dennis**, 618 A.2d 972, 981 (Pa. Super. 1992), **appeal denied**, 634 a.2d 218 (Pa. 1993). The suppression or exclusion of evidence is a "most extreme remedy" that can be justified

only when it is necessary to vindicate fundamental rights or to correct or deter police abuse. **Commonwealth v Dennis**, 618 A.2d 972, 981 (Pa. Super. 1992).

The trial court found that information in the "Date of Violation" box of the search warrant, when read in conjunction with the total application for search warrant, supported, through a reasonable, common sense interpretation of the available information, that the last criminal violation referred to in the affidavit of probable cause occurred no later than 48 hours before application for the search was made by Agent Jena. Under these circumstances, it cannot reasonably be suggested that information a day or two old, as here, is "stale." **Commonwealth v. Albert**, 399 A.2d 1106 (Pa. Super. 1979) (4 days); **Commonwealth v. Allen**, 324 A.2d 437 (Pa. Super. 1974) (9 days); **Commonwealth v. Jackson**, 323 A.2d 799 (Pa. Super. 1974) (9 days).

The search warrant application in the instant case did not have the date and time of the second controlled buy specifically indicated on affidavit of probable cause. However, the application indicated that the most recent event occurred within forty-eight (48) hours of the application for search warrant. Additionally, Agent Jena testified that the second controlled buy occurred on January 30, 2020 and it was due to a clerical error that the date was omitted when copying the information between computer applications.[53]

Although the case law is clear that "[i]n determining whether the warrant is supported by probable cause, the [issuing authority] may not consider any evidence outside the four-corners of the affidavit." **Commonwealth v. Sharp**, 683 A.2d 1219, 1223 (Pa. Super. 1996) (citations omitted). The standard for evaluating a search warrant

---

[53] SHT at 17-18.

24 | P a g e

is a "totality of the circumstances" test as adopted in **Commonwealth v. Gray,** 503 A.2d 921 (Pa. 1985). The issuing authority must make a "practical common sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of person supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." **Commonwealth v. Dean,** 693 A.2d 1360, 1365 (Pa. Super. 1997)(citations, quotations, and emphasis omitted).

At the conclusion of the October 2, 2019 suppression hearing in this case, the trial court determined that paragraphs 21-23 of the affidavit of probable cause contained clerical errors. However, the trial court concluded that sufficient detail regarding the date of the alleged most recent violation was provided elsewhere within the application for search warrant presented to the issuing authority. Namely, the "Date[s] of Violation" box on the first page of the search warrant application advised the issuing authority of a violation that occurred within the "48 hours."

In **Commonwealth v. Ryerson,** 817 A.2d 510 (Pa. Super. 2003), the affidavit of probable cause did not specifically state the date that the officer observed the contraband. **Id.** However, the application for the search warrant did indicate the date of the violation in question. **Id.** The Superior Court held that although the affidavit of probable cause did not specifically state the date the contraband was observed, the fact the application for search warrant did include a date in which the contraband was observed and that application for search warrant was before the issuing authority at the time the search warrant was issued, the information was not stale and the search warrant was valid. **Id.**

25 | P a g e

This combination of facts which point to a course of dealing that continued up to within 48 hours of the application for the search warrant is another fact which makes the search warrant in this case sufficient to "survive the staleness charge." **Commonwealth v. Baker**, 513 Pa. 23, 29–30, 518 A.2d 802, 805 (1986). In **Baker**, the Supreme Court reasoned that "the numerous occasions on which the informant had contact with the defendant were indicative of a course of dealing between the informant and the actor which supplied the veracity and basis of knowledge for [the informant's] information about the crime at hand." Id. In that case, the Pennsylvania Supreme Court held that in viewing the application for the warrant in that case which did not identify the timing of the history of the dealings between the informant and the defendant "in its totality ..., the warrant was properly issued." **Id**.

The issuing authority in the instant case had the information before him at the time the search warrant was sought that the most recent activity occurred within forty-eight (48) hours of the issuance of the search warrant and that the recent activity was part of the course of dealings between the Appellant and the confidential informant. The affidavit of probable cause in this case explains how the matter was called to the attention of the investigating authorities, the steps taken to verify the tip, and the timing of the investigation. Based upon the totality of circumstances, the trial court concluded that the affidavit of probable cause set forth sufficient information to provide a substantial basis for the issuing authority to conclude that probable cause existed to issue the search warrant and that the warrant was not stale.

## Sufficiency of the Evidence

The standard of review for evaluating a sufficiency of the evidence claim is well-settled.

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Further, the trier of fact is free to believe all, part, or none of the evidence.

**Commonwealth v. Jordan**, 2019 PA Super 173 (Pa. Super. Ct. May 29, 2019)(citations omitted). "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." **Commonwealth v. Colon-Plaza**, 136 A.3d 521, 525–26 (Pa. Super. 2016). It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. **Commonwealth v. Tejada**, 107 A.3d 788, 792–93 (Pa. Super. 2015).

## Possession of a Firearm Prohibited

Appellant first alleges that his conviction should be reversed because the Commonwealth failed to present sufficient evidence that the Appellant possessed the firearm at issue. The Appellant contended that the only evidence presented by the Commonwealth regarding the possession of the firearm stemmed from the statement made by the Appellant to Agent Jena and that the statement was not voluntary. Appellant then alleges that the finding that Appellant possessed the firearm in question is also

against the weight of the evidence presented by the Commonwealth for essentially the same reasons as cited in his sufficiency of evidence claim.

The standard of review for challenges to the sufficiency of the evidence is well-settled law. **See, e.g., Commonwealth v. DiStefano**, 782 A.2d 574, 582 (Pa. Super. 2001). The standard applied is "whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." **Id.** at 582 (**citing Commonwealth v. Williams**, 650 A.2d 420, 424 (Pa. 1994)). When applying this test, the court "may not weigh the evidence and substitute [its] judgment for the fact-finder." **DiStevano**, 782 A.2d at 582. Additionally, the facts and circumstances established by the Commonwealth "need not preclude every possibility of innocence." **Id.** Notably, in making a determination, "the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." **Commonwealth v. Gooding**, 818 A.2d 546, 549 (Pa. Super. 2003)(internal citations omitted).

To establish Persons Not to Possess Firearms, the Commonwealth must prove beyond a reasonable doubt that a defendant (1) has been convicted of certain enumerated offenses, or otherwise satisfies certain conditions, and (2) possesses, uses, controls, sells, transfers, or manufactures (or obtains a license to do so) a firearm. 18 Pa.C.S. § 6105(a). **Commonwealth v. Gomez**, 2019 PA Super 359, 224 A.3d 1095, 1101 (Pa. Super. Ct. 2019), re-argument denied (Feb. 18, 2020), appeal denied, 142 MAL 2020, 2020 WL 3496372 (Pa. June 29, 2020).

Here, the jury clearly had sufficient evidence to find Appellant guilty of the only remaining charge of Persons Not to Possess a Firearm as charged in the Criminal Information. During the trial, Appellant and the Commonwealth stipulated to the fact that the Appellant was a person prohibited from possessing or controlling a firearm because of his prior convictions.

During the trial, Agent Jena testified that on the date of in incident he was engaging in the execution of a search warrant on the Appellant's residence and that he spoke with the Appellant on the date of the incident. During that conversation, Appellant advised Agent Jena that there was a firearm under the mattress in the bedroom. Additionally, Agent Jena testified that while he was talking with the Appellant, other agents were searching entirety of the residence to find contraband. All rooms of the residence were to be searched for contraband, which included the Appellant's bedroom. Agent Jena testified that a firearm was found by him under the mattress on top of the box springs in an upstairs bedroom that also contained the photo identification of the Appellant. The weapon was presented as evidence at trial.

Furthermore, the Appellant made a written statement during the time of the execution of the search warrant that stated "The cop came to my house for a cause I don't know, but they found a gun under the bed, which I told them it was mine."[54] This statement was presented to the jury at trial.

In order to convict a defendant for possession of a firearm by a prohibited person, the Commonwealth must prove the defendant was previously convicted of a specific

---

[54] Id. at 74.

offense enumerated in section 6105. **Commonwealth v. Jemison**, 98 A.3d 1254, 1261 (Pa. 2014). Possession of a firearm is an essential element of the statute at issue in this particular case. **Commonwealth v. Antidormi**, 84 A.3d 736, 757 (Pa. Super. 2014).

The Appellant concedes that he had a prior conviction that prohibited him from possession of a firearm. He argues that the Commonwealth failed to establish that he possessed a firearm. However, there is testimony that the firearm was found in Appellant's bedroom and that Appellant's identification card was also found in the same bedroom. The Commonwealth may prove possession through constructive possession.

To establish constructive possession of contraband, the Commonwealth must show that the Appellant had "conscious dominion" over the contraband, that is, "the power to control the contraband and the intent to exercise that control." **Commonwealth v. Parker**, 847 A.2d 745, 750 (Pa. Super. 2004). The "intent to maintain a conscious dominion may be inferred from the totality of the circumstances," and "constructive possession may be found in one for more actors where the item in issue is in an area of joint control and equal access." **Commonwealth v. Johnson**, 26 A.3d 1078, 1094 (Pa. 2011) (citations and brackets omitted).

The firearm was found under the mattress in the Appellant's bedroom where the Appellant's Pennsylvania Identification Card was found. The Appellant directed Agent Jena to the exact spot in a bedroom that was in use by the occupants of that home where the firearm was eventually found and then the Appellant wrote a statement admitting that the firearm was owned by him.

The Appellant argues that his written statement was not voluntary and therefore was not an admission of his possession of the firearm. The jury heard evidence of the Appellant's action in waiving his Miranda rights and in agreeing to talk to Agent Jena. The jury determined that the statements of the Appellant made to Agent Jena were voluntary and the jury was instructed with regards to the voluntariness of the Appellant's statement. Viewed in the light most favorable to the Commonwealth, the Commonwealth presented sufficient evidence that Appellant violated Persons Not to Possess Firearms.

## Weight of the Evidence

The Appellant next challenges the verdict as against the weight of the evidence. The standard of review for a claim that the verdict is against the weight of the evidence is as follows:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

**Commonwealth v. Sebolka,** 205 A.3d 329 (Pa. Super. 2019) (citations omitted). An Appellant concedes that sufficient evidence supports the verdict in a true challenge to the weight of the evidence and instead questions which evidence the fact-finder should have believed. **Commonwealth v. Thompson,** 106 A.3d 742, 758 (Pa. Super. 2014). For that

31 | P a g e

reason, the trial court need not view the evidence in the light most favorable to the verdict winner, and may instead use its discretion in concluding whether the verdict was against the weight of the evidence. **Commonwealth v. Widmer**, 744 A.2d 745, 751 n.3 (Pa. 2000).

The issue of the constitutional admissibility of a defendant's statement to the police is to be submitted to the jury for its resolution.... [T]he jury's determination of involuntariness is to be based on the totality of the circumstances...." **Commonwealth v. Cox**, 546 Pa. 515, 686 A.2d 1279, 1286–1287 (1996) (citations omitted). In this case, the oral and written statements were given after the Appellant was advised of his Miranda rights. He was not handcuffed when he gave the written statement. Counsel for the Appellant elicited facts concerning the manner of entry into the Appellant's home, the manner in which Appellant's family was secured, the number of law enforcement officials that entered the home that day and, Agent Jena's reference to the possibility of the Appellant's spouse as being a potential co-defendant for the possession of the firearm. The jury was instructed on the requirement that they must find the statements of the Appellant to be voluntary and counsel for Appellant forcibly argued the issue of voluntariness during his closing argument. Appellant has not identified any facts that are of greater weight than the facts established by the Commonwealth's evidence.

The direct and circumstantial evidence discussed above was not so ambiguous and uncertain that the jury verdict somehow shocked the conscience of the trial court. Since the Appellant has not demonstrated that the guilty verdict was against the weight of the evidence, Appellant's allegations are without merit.

## ALLEGED TRIAL ERRORS

### Appellant's Objection to the Peremptory Strike of a Juror

Appellant also argues that the jury selection process in this case violated **Batson v. Kentucky**, 476 U.S. 79 (S. Ct. 1986). The basis for that claim is that the Commonwealth violated **Batson** by striking an African-American member of the venire and that the Commonwealth should have been required to challenge the juror for cause when the basis is inherent bias or inability to be impartial.

Appellant relies **Commonwealth v. Jones**, 477 Pa. 461 (Pa. Super. 1978) as a basis for his argument regarding the procedural requirement to challenge for cause as opposed to a peremptory challenge. Appellant states that according to **Jones** the proper procedure to reject a juror for inherent bias that would affect the ability of that juror to be impartial is to challenge for Cause. **Id.** However, in **Jones**, the defendant was challenging the court's refusal to grant defendant's challenge for cause and forcing him to use a peremptory challenge in order to remove the juror, which resulted in the defendant using all of his peremptory challenges before all jurors were empaneled. **Id.**

In **Commonwealth v. Jackson**, 562 A2d 338 (Pa. Super. 1989), the Superior Court defined the primary function of the peremptory challenge as "to allow parties to strike prospective jurors who they have good reason to believe might be biased but who are not so clearly and obviously partial that they could otherwise be excluded from the panel." **Id.** (citations omitted). "[A] peremptory challenge need not be supported by the same quantum of proof as would be necessary for a challenge for cause." **Id.** The reasons

for the challenge need not rise to the level of a "for cause" challenge. **Commonwealth v. Jones**, 668 A.2d 491, 519 n. 31 (Pa. 1995).

Furthermore, as recited in **Jackson**, **Batson** did not disturb the holding in **Swain v. Alabama**, 380 U.S. 202 (S.Ct. 1965) that the government has a right to exercise its challenges in any manner it chooses so long as their use does not serve racially discriminatory ends. **Jackson**, 562 A.2d at 355. The **Jackson** Court further stated that it did not question the statement that:

> [t]he essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry, and without being subject to the court's control. While challenges for cause permit rejection of jurors on a narrowly specified, provable and legally cognizable basis of partiality, the peremptory permits rejection for a real or imagined partiality that is less easily designated or demonstrable. It is often exercised upon the "sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another," upon a juror's "habits and associations," or upon the feeling that "the bare question of [a juror's] indifference may sometimes provoke a resentment.

**Id.** (citing **Swain**, 380 U.S. at 220).

For the forgoing reasons, the Commonwealth's use of a peremptory challenge as opposed to a challenge for cause is not procedurally improper and the Trial court must now analyze the Appellant's objection to the Commonwealth's peremptory challenge by applying the three part test set forth in **Batson.**

In **Batson v. Kentucky**, 476 U.S. 79 (S. Ct. 1986), the Supreme Court of the United States held that a prosecutor's challenge to potential jurors solely on the basis of race violates the Equal Protection Clause of the United States Constitution." **Commonwealth v. Reid**, 99 A.3d 470, 484 (Pa. 2014) (citation omitted).

Under **Batson v. Kentucky**, 476 U.S. 79 (S. Ct. 1986), the prosecutor's proffered explanation must consist of "'legitimate reasons' for exercising the challenges." **Batson**, 476 U.S. at 98 n. 20. This is a broad category. "[T]he prosecutor's explanation need not rise to a level justifying exercise of a challenge for cause." **Id.** at 1723. "'[T]here are any number of bases' on which a prosecutor may reasonably believe that it is desirable to strike a juror who is not excusable for cause." **Id.** at 1724 n. 20 (citation omitted).

When a defendant makes a **Batson** challenge during jury selection:

> First, the defendant must make a *prima facie* showing that the circumstances give rise to an inference that the prosecutor stuck on or more prospective jurors on account of race; second, if the *prima facie* showing is made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the juror(s) at issue; and third, the trial court must then make the ultimate determination of whether the defense has carried its burden of proving purposeful discrimination.

**Commonwealth v. Watkins**, 108 A.3d 692, 708 (Pa. 2014) (citation omitted).

The first step in the **Batson** analysis is determining whether Appellant made "a *prima facie* showing that the circumstances give rise to an inference that the prosecutor struck one or more prospective jurors on account of race[.]" **Watkins**, 108 A.3d at 708 (citation omitted). The Supreme Court has explained:

> To establish a *prima facie* case of purposeful discrimination[,] the defendant must show that he is a member of a cognizable racial group, that the prosecutor exercised a peremptory challenge or challenges to remove from the venire a member of the defendant's race; and that other relevant circumstances combine to raise and inference that the prosecutor removed the juror(s) for racial reasons.

**Commonwealth v. Cook**, 952 A.2d 594, 602 (Pa. 2008) (internal alterations, ellipsis, footnote, and citation omitted).

In the instant case, Appellant established a *prima facie* case of purposeful discrimination. Appellant is African-American and the Commonwealth struck an African-American prospective juror.

The second step in the **Batson** analysis is the determination of whether the Commonwealth provides a race-neutral explanation for striking the prospective juror. **Watkins**, 108 A.3d at 708 (citation omitted). The Supreme Court has explained as follows:

> The second prong of the **Batson** test, involving the prosecution's obligation to come forward with a race-neutral explanation of the challenges once a *prima facie* case is proven, does not demand an explanation that is persuasive, or even plausible. Rather, the issue at that stage is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.

**Commonwealth v. Harris**, 817 A.2d 1033, 1043 (Pa. 2002) (internal quotation marks and citations omitted).

The Commonwealth proffered race-neutral explanations for striking the prospective juror in question. The Commonwealth stated that it struck Juror No. 1-105 for two race-neutral reasons. First, the juror had indicated that someone very close to her was a defendant in a double homicide case and that the results of that case left her "unhappy with the decision" and essentially the justice system. Secondly, that the juror believed that police officers will lie to get convictions. The Commonwealth stated that it had a belief that the potential juror could not be impartial due the concerns that she brought to the attention of the parties.

The third step in a **Batson** analysis involves determining if the defense carried its burden of proving purposeful discrimination. **Watkins**, 108 A.3d at 708 (citation omitted). "It is at this stage that the persuasiveness of the facially-neutral explanation proffered by the Commonwealth is relevant." **Commonwealth v. Towles**, 106 A.3d 591, 601 (Pa. 2014) (citation omitted). "The best evidence often will be the demeanor of the prosecutor who exercises the challenge." **Commonwealth v. Williams**, 980 A.2d 510, 531 (Pa. 2009).

After such a record is established, the trial court is to consider the totality of the circumstances to determine whether challenges were used to exclude venire persons on account of race or gender. **Commonwealth v. Spence**, 627 A.2d 1176, 1182-1183 (Pa. 1993).

In **Commonwealth v. Hardcastle**, 546 A.2d 1101, 1104 (Pa. 1988), the Pennsylvania Supreme Court held that Appellant did not make out a *prima facie* showing of improper use of peremptory challenges when the Commonwealth sought to peremptorily challenge twelve (12) of fourteen (14) minority potential jurors. The reasons for the strikes of three of the potential jurors were due to family members being victims or defendants of crimes. **Id.** at 1105. Another potential juror testified that she would not follow the judge's instructions, but then was rehabilitated through questioning. **Id.** These were all acceptable race-neutral reasons for peremptory strikes.

In **Commonwealth v. Bond**, 652 A.2d 308, 313 (Pa. 1995), the Supreme Court of Pennsylvania held that the race-neutral reasons presented by the Commonwealth were

acceptable when the reason stated was that the potential jurors had family members who had been arrested and charged with crimes.

In **Commonwealth v. Towles**, 106 A.3d 591, 600 (Pa. 2014), the Pennsylvania Supreme Court accepted the Commonwealth's race-neutral explanation that a potential juror indicated they were less likely to believe the testimony of a police officer as sufficient.

In the instant case, this court acknowledges Appellant's efforts to rehabilitate the potential juror during voir dire. The potential juror expressed what appeared to be a deep seeded concern about police tactics and her general view that police would resort to lying or other improper conduct to get a conviction. The Trial court was made aware that the Commonwealth's case was based almost entirely on the testimony of a law enforcement official. The trial court carefully scrutinized the reasons given by the Commonwealth in exercising the peremptory challenge for the potential juror while at the same time observing the demeanor of the Commonwealth attorney during his proffer of a racially-neutral reason for the peremptory strike. The trial court then concluded that the Commonwealth's race neutral explanation was rooted in its belief that, even after the counsel for the Appellant may have rehabilitated the potential juror such that a motion to strike for cause was not a viable action, the potential juror had a distrust for police officers that stemmed from her admitted belief that police officers lie and/or manipulate situations to get a conviction. The other race neutral reason that was found to be credible was the potential juror's history of having a close friend that was convicted of a double homicide crime through a prosecution that occurred in Beaver County and which led to

that potential juror questioning the fairness of the trial system as it related to her friend. The potential juror's statements were thought by the Commonwealth to impair her ability to be impartial despite her outward answers to the contrary.

Appellant failed to make out a case of purposeful discrimination and the proper course of action in this instance was to deny the Batson challenge.

**Appellant's Cross-Examination of Agent Jena regarding "missing witnesses"**

Appellant's sole complaint for this final assignment of error relates to the Trial court's evidentiary ruling which sustained the objection to Appellant's effort to have Agent Jena confirm that because the eight members of the SWAT team were not to be called as witnesses by the Commonwealth, that the jurors were not going to know what the testimony of the SWAT team members would be. That was a question that had already been asked by counsel for the Appellant on another occasion and was not objected to by the Commonwealth. Even counsel for the Appellant confirmed that fact when he said during the argument for that objection that he was not going much further with the inquiry that was the subject of the objection because "I think the points (sic) made. They didn't bring these people." **Notes of January 8, 2020 Trial Testimony** – Page 132.

Just prior to that re-cross examination question to which the objection was lodged, counsel for Appellant pressed Agent Jena, without objection, to concede that: (1) the SWAT team members were not at trial to testify, (2) Agent Jena could not detail each action taken by every SWAT team member, and (3) the SWAT team members could have come to trial to describe their role in entering the home and securing the occupants. The objectionable question which is the basis of this final assignment of error was further

39 | P a g e

preceded on cross examination by counsel for the Appellant where Agent Jena was asked to concede that: (1) the SWAT team members, if they were called as witnesses by the Commonwealth, could have testified to their own activities once they entered the home, (2) that the SWAT team members were not, however, going to be called as witnesses to provide that testimony, and (3) since the SWAT team members were not at the trial and were not to be called as witnesses, "these ladies and gentlemen here [the jurors] they're never going to hear from them right?" **Notes of January 8, 2020 Trial Testimony –** page 122.

The Trial court is mindful that it was Agent Jena who spoke with the Appellant at the kitchen table when the Appellant admitted that there was a gun under his mattress. Agent Jena then retrieved the gun from the place where the Appellant said the gun would be located. Agent Jena then took the written admission/statement from the Appellant which was read into the record. Agent Jena was the lead officer that day and his testimony was based on his observations. At no time did the Appellant show or contend that the SWAT team members were not available to be called as witnesses by the Appellant. At no time did the Appellant show that the SWAT team members refused to talk to counsel for Appellant prior to trial and at no time did the Appellant show that the SWAT team members would not have been amenable to process if summoned by counsel for the Appellant.

As our Supreme Court has directed,

> the decision to admit or exclude evidence is committed to the trial court's sound discretion and its evidentiary rulings will only be reversed upon a showing that it abused that discretion. Such a finding may not be made

"merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous."

**Commonwealth v. Sherwood**, 603 Pa. 92, 112, 982 A.2d 483, 495 (2009).

The following general rule is well settled:

[W]hen a potential witness is available to only one of the parties to a trial, and it appears this witness has special information material to the issue, and this person's testimony would not be merely cumulative, then if such party does not produce the testimony of this witness, the jury may draw an inference it would have been unfavorable. (citations omitted).

**Commonwealth v. Jones**, 317 A.2d 233, 237 (Pa. 1974); **Commonwealth v. Gibson**, 369 A.2d 314 (Pa. Super. 1976); **Commonwealth v. Whyatt**, 340 A.2d 871 (Pa. Super.1975).

It is equally established that the prosecutor is not obliged to call all eye witnesses to a crime, particularly where he believes after due investigation that a witness' testimony may be unreliable, unimportant, irrelevant, or merely cumulative. **Commonwealth v. Smith**, 324 A.2d 483 (Pa. Super. 1974); **Commonwealth v. Paull**, 378 A.2d 1006 (Pa. Super. 1977). The calling of witnesses is within the discretion of the prosecution under the general direction of the trial judge. **Commonwealth v. Thurman**, 76 A.2d 483 (Pa. Super. 1950).

Here, the Trial court was justified in refusing to permit the Appellant to continue to question Agent Jena with regards to SWAT team members that were at the scene on the date in questions. By the time that the Commonwealth attorney finally objected to this line of questioning, counsel for the Appellant had made that same point on a number of

occasions. Counsel conceded as much when he said that his point was already made.

Furthermore, the SWAT team members were equally available to both parties. All of the SWAT team and the Drug Task Force members were available to the Appellant through the subpoena process. The record also reflects that Appellant was also permitted to address the jury during closing argument about these other officers and that they were not called as witnesses by the Commonwealth.

The trial court sustained the objection of the Commonwealth when the Commonwealth finally objected. By that time, the question to which the objection was sustaind, phrased slightly differently, was already asked. Under these circumstances, the objection was properly sustained.

## CONCLUSION

For the reasons stated above, this Court respectfully submits that the allegations of error in this case are without merit and therefore this Court's holding should be affirmed. The Beaver County Clerk of Courts is hereby directed to file the record of these proceedings with the Superior Court of Pennsylvania. An appropriate order shall follow.

Respectfully Submitted,

BY THE COURT

MITCHELL P. SHAHEN, JUDGE

J.

JUDY R. ENSLEN
CLERK OF COURTS
20 SEP 21 PM 2: 16
BEAVER COUNTY
PENNSYLVANIA

2020 SEP 21 PD 2: 00

IN THE COURT OF COMMON PLEAS OF BEAVER COUNTY,
PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA :
                                :           No. 557 of 2019

         vs.                    :

                                  :           758 WDA 2020

DONTAE RAMONE PATRICK         :

Shahen, Mitchell P.                            SEPTEMBER 21, 2020

**AND NOW,** this 21st day of September, 20209, it appearing that the Appellant has

filed a Notice of Appeal in the above-captioned case and it further appearing that the

accompanying Memorandum Opinion satisfies the requirements of Pa. R.A.P. 1925(a).

**IT IS SO ORDERED** that the Clerk of the Court, Criminal Division, transmit the record

in the above captioned case to the Superior Court forthwith.

BY THE COURT:

_____
Mitchell P. Shahen, Judge